1  JEREMY W. FAITH (SBN 190647)
   Email: Jeremy @MarguliesFaithLaw.com
2  MEGHANN A. TRIPLETT (SBN 268005)
   Email: Meghann @MarguliesFaithLaw.com
3  **MARGULIES FAITH, LLP**
4  16030 Ventura Blvd., Suite 470
   Encino, California 91436
5  Telephone: (818) 705-2777
   Facsimile:  (818) 705-3777
6
7  Attorneys for Peter J. Mastan, Chapter 7 Trustee

8              **UNITED STATES BANKRUPTCY COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
               **LOS ANGELES DIVISION**
10

11  In re                              Case No.:  2:17-bk-21275-ER

12  TBETTY, INC.,                      Chapter: 7

13                                     **OMNIBUS MOTION FOR ORDER**
                                       **AUTHORIZING THE TRUSTEE TO**
14                          Debtor.    **SETTLE CERTAIN ADVERSARY**
                                       **ACTIONS PURSUANT TO F.R.B.P.**
15                                     **9019; MEMORANDUM OF POINTS**
                                       **AND AUTHORITIES; DECLARATION**
16                                     **OF CHAPTER 7 TRUSTEE, PETER J.**
                                       **MASTAN IN SUPPORT**
17
18                                     [Request for Judicial Notice filed
                                       concurrently]
19
20                                     [No Hearing Required Unless Requested
                                       Pursuant to Local Bankruptcy Rule 9013-
21                                     1(o)]

22

23

24

25

26

27

28

**TABLE OF CONTENTS** <span style="float:right">**Page**</span>

I.    **INTRODUCTION** ...........................................................................................3

II.   **STATEMENT OF FACTS**..............................................................................4

   A.   **Background Facts**.................................................................................4

   B.   **The Bankruptcy Filings** ......................................................................6

   C.   **The Hwang Adversaries** .....................................................................7

   D.   **Events Following the Commencement of the Hwang Adversaries** ...............15

   E.   **Summary of Proposed Settlement Terms**.........................................15

III.  **ARGUMENT**.................................................................................................17

   A.   **The Trustee is Authorized to Enter Into the Compromises Represented by the Agreements and Notice of the Relief Sought is Proper** ...........................17

   B.   **The Compromises Represented by the Agreements Should be Approved**..17

   1.   **The Probablity of Success on the Merits Favors Settlement**........................18

   2.   **The Difficulties of Collection Favor the Proposed Settlements**....................19

   3.   **The Complexity, Expense, Inconvenience, and Delay of the Litigation Involved Favors Approval of the Settlements** ................................................21

   4.   **The Paramount Interest fo Creditors Favors Settlements**.............................21

V.    **CONCLUSION** ............................................................................................22

**DECLARATION OF PETER J. MASTAN** .......................................................23

# TABLE OF AUTHORITIES

## CASES                                                                    **Page**

In re A & C Properties,
    784 F.2d at 1381 ..................................................................................... 17, 18

In re Doctors Hospital of Hyde Park, Inc.,
    474 F.3d 421, 428-30 (7th Cir. 2007) ...................................................... 18

In re Drexel Burnham Lambert Group, Inc.,
    134 B.R. 493 (Bankr. S.D.N.Y. 1991) ....................................................... 18

In re Heissenger,
    67 B.R. at 383 ...................................................................................... 17, 18

In re W.T. Grant Co.,
    699 F.2d 599, 608 (2d Cir.) ...................................................................... 18

Magill v. Springfield Marine Bank (In re Heissenger Resources, Ltd.)
    67 B.R. 378, 382 (C.D. Ill. 1986) .............................................................. 17

Martin v. Kane (In re A&C Properties),
    784 F.2d 1377, 1381 (9th Cir. 1986) ......................................................... 17

Official Creditors Comm. v. The Beverly Almont Company (In re The
    General Store of Beverly Hills),
    11 B.R. 539, 542 (B.A.P. 9th Cir. 1981) ................................................... 18

Port O'Call Investment Co. v. Blair (In re Blair),
    538 F.2d 849, 851 (9th Cir. 1976) ............................................................ 17

Spirtos v. Ray (In re Spirtos),
    2006 Bankr. LEXIS 4894 at *32 (B.A.P. 9th Cir. May 19, 2006) .............. 18

United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.),
    669 F.2d 1325, 1328 (9th Cir. 1982) ........................................................ 18

**STATUTES**                                                           **Page**

11 U.S.C. § 544 ............................................................................................3, 6

11 U.S.C. § 544(b)................................................................ 7, 9, 10, 11, 12, 13, 14

11 U.S.C. § 548 ..................................................................... 3, 6, 12, 13, 14

11 U.S.C. § 548(a)(1)(A)...............................................................7, 11, 12

11 U.S.C. § 548(a)(1)(B).................................................... 7, 9, 10, 11, 12, 13, 14, 15

11 U.S.C. § 550 ...................................................................... 3, 6, 14, 15

11 U.S.C. § 550(a)............................................................ 7, 9, 10, 11, 12, 13, 14

Cal. Civ. Code § 3439.04.................................................. 6, 7, 9, 10, 11, 13, 14

Cal. Civ. Code § 3439.04(a) ............................................7, 9, 11, 12, 13, 14

Cal. Civ. Code § 3439.04(b) ............................................7, 9, 11, 12, 13, 14

Cal. Civ. Code § 3439.05.................................................. 6, 9, 11, 12, 13, 14

Cal. Civ. Code § 3439.07.................................................. 6, 7, 9, 11, 12, 13, 14


**RULES**                                                           **Page**

Federal Rule of Bankruptcy Procedure 2002...................................................17

Federal Rule of Bankruptcy Procedure 2002(a)(6) .........................................17

Federal Rule of Bankruptcy Procedure 9019............................................ 1, 4, 17, 18, 23

Local Bankruptcy Rule 9013-1(o) ...................................................................17


**TREATISES**                                                     **Page**

10 Collier on Bankruptcy,
16th Ed., ¶ 9019.02 ...................................................................................18

1  **TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY**

2  **JUDGE, AND ALL INTERESTED PARTIES:**

3        Peter J. Mastan, in his capacity as chapter 7 trustee ("Trustee" or "Plaintiff") for

4  the bankruptcy estates of Keystone Textile, Inc. (the "Keystone Estate") and Tbetty,

5  Inc. (the "Tbetty Estate," together with the Keystone Estate, the "Estates"), respectfully

6  brings this "Omnibus Motion for Order Authorizing the Trustee to Settle Certain

7  Adversary Actions Pursuant to F.R.B.P. 9019" (the "Compromise Motion")[1] and moves

8  this Court for an order approving the proposed "Global Settlement Agreement and

9  Mutual General Release" (the "Hwang Agreement") resolving ten (10) separate

10  adversary proceedings and the Trustee's claims against Kenny Hwang ("Mr. Hwang"),

11  Mirea Hwang ("Mirea"), Hyun Hwang ("Hyun"), Nam Soo Hwang ("Nam Soo"), Young

12  Jae Hwang ("Young Jae"), In Young Hwang ("In Young"), Tri. Blossom, LLC ("Tri

13  Blossom") (collectively, the "Hwang Defendants"), Twig & Twine, Inc., ("Twig &

14  Twine"), Danielle Steckler, dba Paper Palate ("Paper Palate") (together, with the

15  Hwang Defendants, the "Defendants").   A true and correct copy of the Hwang

16  Agreement is attached as **Exhibit A**.

17        The Trustee is also seeking approval of the compromise reached with Pacific

18  Sourcing Group, Inc. ("Pacific") with respect to its asserted judgment lien against the

19  real property located at 3512 Buena Vista Ave., Glendale, CA 91208 (the "Glendale

20  Property).  A true and correct copy of the "Settlement Agreement and Mutual Release"

21  reached with Pacific (the "Pacific Agreement," together with the Hwang Agreement, the

22  "Agreements") is attached as **Exhibit B**.

23        In support of this Compromise Motion, the Trustee will rely on these moving

24  papers, the Notice of the Compromise Motion, the Memorandum of Points and

25  Authorities, the Declaration of Peter J. Mastan and the Exhibits annexed to this

26  Compromise Motion, the Request for Judicial Notice filed concurrently with the

27

28  _____
[1] The Trustee is concurrently seeking approval of the Agreements pursuant to Fed. R.
Bankr. P. 9019 in the Keystone Bankruptcy Case.

1    Compromise Motion, all of the files and records on file in the chapter 7 cases of

2    Keystone Textile, Inc. and Tbetty, Inc. (the "Bankruptcy Cases") and underlying

3    adversary proceedings, and such further evidence as may be presented prior to or at

4    any hearing on the Compromise Motion.

5        **WHEREFORE**, the Trustee respectfully requests that this Court enter an order:

6    1.  Granting this Compromise Motion;

7    2.  Approving the Agreements attached as <u>Exhibits A and B</u>;

8    3.  Authorizing the division of proceeds received under the Agreements to be

9        split 50/50 between the Estates;

10   4.  Authorizing the Trustee to take any and all steps necessary to effectuate the

11       Agreements; and

12   5.  Granting such other and further relief as the Court deems just and proper

13       under the circumstances.

14

15   Dated:  November 30, 2020                    **MARGULIES FAITH LLP**

16

17                                           By:   _/s/ Meghann A. Triplett_
                                                  Meghann A. Triplett
                                                  Attorneys for Chapter 7 Trustee,
18                                                Peter J. Mastan

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Trustee, in the exercise of his business judgment, has determined it is in the best interest of the Estates to globally resolve the Estates' various claims against the Debtors' insiders (defined above as the "Hwang Defendants"). The claims seek recovery of certain transfers the Trustee asserts are avoidable under 11 U.S.C. §§ 544, 547, 548, 550 and 551, as well as other pre-petition claims asserted in the ten separate adversary proceedings described below (collectively, the "Hwang Adversaries"). The Hwang Agreement provides for entry of a stipulated judgment in the Tri Blossom Adversary (defined below) avoiding the Tri Blossom Transfer[2], recovering the Glendale Property for the benefit of the Estates, directing the turnover of the Glendale Property to the Trustee, and a cash payment of $7,000 (the "Payment"). Following approval of the Compromise Motion, the Trustee will seek to market and sell the Glendale Property pursuant to 11 U.S.C. § 363. The Trustee estimates that the proposed sale will generate net proceeds of approximately $160,000-$193,000.[3]

The proposed compromise also includes a dismissal of the Trustee's claims against non-insider co-defendants Twig & Twine (florist) and Paper Palate (caterer) (together, the "Wedding Defendants") in the In Young Adversary (defined below) for avoidance and recovery of approximately $21,000 in transfers from the Keystone Debtor for services performed at In Young's wedding.

---

[2]In the Tri Blossom Adversary, the Trustee alleged, among other claims, that the down payment on the Glendale Property was fraudulently transferred from the Tbetty Debtor, and, as such, (1) the Tbetty Estate holds either legal or equitable title to the Glendale Property, (2) the Trustee is entitled to the imposition of a Constructive Trust over the Glendale Property, and (3) the subsequent transfer of the Glendale Property to Tri Blossom for no consideration is avoidable as a fraudulent transfer (the "Tri Blossom Transfer").

[3] This estimate includes hypothetical payment of a contested $300,000 note held by K2 America, Inc. (the "K2 Note") and secured against the Glendale Property. The Trustee maintains that the K2 Note is subject to avoidance as alleged in the Tri Blossom Adversary (defined below). The Trustee will seek to sell the Glendale Property free and clear of the K2 Note as a contested lien under 11 U.S.C. § 363(f)(4).

1      While the Trustee believes the claims against the Defendants are meritorious,

2  there is attendant risk and significant cost associated with pursuing the claims, and no

3  assurance that the Court would find in favor of the Trustee for all or a portion of the

4  amounts sought.  The Trustee further believes that it would be extremely difficult to

5  collect on any judgments, and the proposed compromises remove the uncertainty,

6  delay, and expense of collection.

7      The Trustee is concurrently seeking approval of the Pacific Agreement, which

8  resolves Pacific's Notice of Levy under Writ of Execution (Money Judgment) recorded

9  against the Glendale Property (the "Pacific Writ") and currently encumbering title.  The

10  Pacific Writ stems from an approximate $370,000 pre-petition judgment against Mr.

11  Hwang and the Keystone Debtor.  The proposed compromise resolves all disputes with

12  respect to the enforceability of the Pacific Writ and provides for release of the Pacific

13  Writ in exchange for a payment of $25,000 to Pacific from the sale proceeds of the

14  Glendale Property, as well as an allowed claim in the Keystone Bankruptcy Case.  The

15  settlement with Pacific allows the Trustee to expeditiously liquidate the Glendale

16  Property and avoids the risk, expense, and delay of contesting the Pacific Writ.

17  Moreover, if the Pacific Writ were enforceable, there would be no equity in the Glendale

18  Property above the secured liens.

19      As further detailed below, the Trustee believes the Agreements represents a fair,

20  and equitable resolution of the Estates' claims against the Defendants, and should,

21  therefore, be approved by the Court pursuant to F.R.B.P. 9019.

22                 **II**

23           **STATEMENT OF FACTS**

24    **A.**    **Background Facts**

25      On or about March 8, 2017, Mirea and Hyun purchased the Glendale Property

26  for approximately $1,370,000, with a $770,000 cash down payment (the "Down

27  Payment").  Title to the Glendale Property was vested as "Hyun Hwang, a single

28  woman, and Mira Hwang, a married woman as her sole and separate property as joint

tenants" (the "Hwang Grant Deed").    Concurrently with the recording of the Hwang

Grant Deed, a Quitclaim Deed was recorded, releasing any interest of Mira's husband,

Mr. Hwang, in the Glendale Property (the "Hwang Quitclaim").

On or about May 9, 2017, Milberg Factors of California, Inc. ("Milberg"), initiated

a lawsuit against Mr. Hwang and his entity Keystone Textile, Inc. ("Keystone"), in the

Superior Court of the State of California, County of Los Angeles, entitled <u>Milberg</u>

<u>Factors of California, Inc. v. Kenny Hwang, et al</u>., Case No. BC660780, for breach of

contract and monetary damages related to goods sold to Keystone (the "Action").    A

stipulated judgment in the amount of $370,549.37 (the "Judgment") was entered in the

Action on May 19, 2017, in favor of Milberg Factors of California, Inc. ("Milberg"), and

against Mr. Hwang and Keystone.

Following entry of the Judgment, on July 27, 2017, Milberg caused an Abstract

of Judgment to be recorded in Los Angeles County as Instrument No. 20170846975

against Mr. Hwang and Keystone on account of the Judgment (the "Hwang Abstract").

On or about April 3, 2018, Milberg re-recorded the Hwang Abstract as Instrument No.

201780319264.

On August 4, 2017, Mirea and Hyun recorded a Grant Deed transferring title of

the Glendale Property to their entity Tri. Blossom LLC, a California Limited Liability

Company ("Tri Blossom") as Instrument No. 20170883590.    Mirea and Hyun were the

managing members of Tri Blossom.

On September 11, 2017, Tri Blossom, through Mirea and Hyun caused: (1) a

Deed of Trust and Assignment of Rents to be recorded as Instrument No.

20171025249 of Official Records against the Glendale Property (the "GBC DOT").    The

GBC DOT purportedly secured a $300,000 note (the "GBC Note") in favor of General

Business Credit ("GBC"); and (2) a Short Form Deed of Trust and Assignment of Rents

to be recorded as Instrument No. 17-1030312 of Official Records against the Glendale

Property (the "K2 DOT").    The K2 DOT purportedly secured a $300,000 note (the "K2

Note") in favor of K2 America, Inc., a California Corporation ("K2 America").

**B.**    **The Bankruptcy Filings**

Three days later, on September 14, 2017 (the "Petition Date"), Mr. Hwang's entities Tbetty, Inc. (the "Tbetty Debtor") and Keystone Textile, Inc. (the "Keystone Debtor", together with the Tbetty Debtor, the "Debtors") filed voluntary bankruptcy petitions under Chapter 7 of the Bankruptcy Code before the United States Bankruptcy Court for the Central District of California, commencing the Bankruptcy Cases. The Trustee is the duly appointed and acting chapter 7 trustee of the Debtors' Estates under 11 U.S.C. § 702.

At all relevant times, Mr. Hwang was the person-in-charge of the Debtors and had access to, and exercised control over, the Debtors and the Debtors' bank accounts.

On or about February 6, 2019, as part of its collection efforts in the Action, Milberg caused a Notice of Levy under Writ of Execution (Money Judgment) to be recorded against the Glendale Property as Instrument No. 20190112976 of the Official Records (the "Pacific Writ"), seeking to collect on the Judgment against Mr. Hwang. The Pacific Writ is encumbering title to the Glendale Property.

Pacific subsequently acquired Milberg's claims in the Action on or about May 31, 2019, including, but not limited to, the Judgment, the Hwang Abstract, and Milberg's claims against the Keystone Debtor. Pacific also caused an additional Abstract of Judgment to be recorded in Los Angeles County as Instrument No. 20190544191 against Mr. Hwang and Keystone on account of the Judgment (referred to collectively with the Hwang Abstract as the "K. Hwang Judgment Lien").

Pursuant to his statutory duties in the Bankruptcy Cases, the Trustee commenced the Hwang Adversaries described below against the Defendants for avoidance and recovery of certain transfers under 11 U.S.C. §§ 544, 547, 548, 550, 551 and California Civil Code §§ 3439.04, 3439.05 and 3439.07, as well as other claims of the Estates as summarized below.

/ / /

**C.    The Hwang Adversaries**

1.  *Mastan v. K2 America, Inc., Kenny Hwang, Mirea Hwang, Tri. Blossom, LLC, et. al., Adversary No. 2:19-ap-01404-ER*

On September 15, 2019, the Trustee commenced an adversary proceeding against Mr. Hwang, Mirea, Hyun, Tri Blossom (collectively, the "Tri Blossom Defendants"), and other named defendants by filing a "Complaint for: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. 544(b) 548(a)(1)(A) and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; (3) Avoidance of Preferential Transfers [11 U.S.C. § 547]; (4) Recovery from Subsequent Transferee [11 U.S.C. §§ 544, 548]; (5) Recovery of Avoided Transfers [11 U.S.C.§ 550(a)(2)]; (6) Conspiracy to Defraud [11 U.S.C. § 105(a)]; (7) For Recovery of Illegal Dividends [Cal. Corp. Code §§ 500, 501 and 506]; and (8) For Unjust Enrichment," initiating Adversary Case No. 2:19-ap-01404-ER (the "Tri Blossom Adversary").

The Tri Blossom Adversary alleges that during the four-year period prior to the Petition Date in the Tbetty Bankruptcy Case, Mr. Hwang failed to keep complete and/or accurate accounting records of the Tbetty Debtor, commingled funds, deposited, transferred, and disbursed monies of the Tbetty Debtor, as he saw fit, to, or for the benefit of, one or more of the Tri Blossom Defendants in a continuous and cumulative pattern of tortious conduct.

The Trustee further alleged that the Down Payment for the Glendale Property was fraudulently transferred from the Tbetty Debtor, for no consideration, for the benefit of the Tri Blossom Defendants and that the Glendale Transfer was part of a larger pattern of transferring assets from the Tbetty Debtor to, or for the benefit of, the Tri Blossom Defendants.   The Trustee contends that as a result of the above listed transactions, the Tbetty Debtor holds either legal or equitable title to the Glendale Property.   Further, (i) the funds for the Glendale Transfer can be traced back to the

1    Tbetty Debtor, (ii) the Tri Blossom Defendants, who are insiders of the Tbetty Debtor

2    and specifically Mr. Hwang who is its President/Person-In-Charge, directed all aspects

3    of the purchase of the Glendale Property, (iii) defendants Mirea and Hyun paid nothing

4    for the Glendale Property and did not maintain any true authority over the same, (iv) the

5    Tbetty Debtor or its affiliates paid some or all of the debt service, real estate taxes, and

6    maintenance costs on the Glendale Property, and (v) the Tri Blossom Defendants

7    reside in the Glendale Property.

8        The Tri Blossom Complaint also contains allegations against Mr. Hwang relating

9    to an extensive fraudulent check cashing scheme with co-defendant K2 America and

10    contends that at least $4,841,401.23 was fraudulently transferred from the Tbetty

11    Debtor during the four-year period prior to the Petition Date (the "K2 America

12    Transfers") to or for the benefit  of the Tri Blossom Defendants. The Trustee alleges

13    that the K2 America Transfers are avoidable as either actual or constructive fraudulent

14    transfers and subject to recovery by the Trustee.

15        K2 America is not a party to the Agreements, and the Trustee's claims against

16    K2 America remain pending.

17        *Pacific Sourcing Group's Asserted Judgment Lien Against the Glendale Property*

18        The Trustee disputes the validity of Pacific's security interest in the Glendale

19    Property on the grounds that: (1) Mr. Hwang never held any interest or record title to

20    the Glendale Property, (2) the Down Payment used to purchase the Glendale Property

21    was property of the Tbetty Debtor, subject to avoidance and recovery by the Trustee as

22    either a constructive or actual fraudulent transfer, (3) the Tbetty Estate holds either

23    legal or equitable title to the Glendale Property and (4) the Trustee is entitled to the

24    imposition of a Constructive Trust over the Glendale Property.  As such, the Trustee

25    maintains that Pacific does not have a valid security interest in the Glendale Property

26    on account of the Judgment, the Alleged Judgment Lien did not attach to the Glendale

27    Property, and the Pacific Writ is unenforceable and should be quashed.

28

Pacific has denied the claims of the Trustee and contends that the Pacific Writ is an enforceable lien against the Glendale Property on account of the Judgment because the Hwang Quitclaim is avoidable as either a constructive or actual fraudulent transfer, Mr. Hwang retained an equitable interest in the Glendale Property after he transferred his interest in the Glendale Property, and/or Mr. Hwang is the alter ego of Tri Blossom.

2. _Mastan v. Kenny Hwang, et. al., Adversary No. 2:19-ap-01402-ER_

On September 14, 2019, the Trustee commenced an adversary proceeding against Mr. Hwang and other defendants by filing a "Complaint for: (1) Avoidance of Actual Fraudulent Transfer under 11 U.S.C. §§ 544(b), 548(a)(1)(A), 550(a); and Cal. Civ. Code §§ 3439.04(a) and 3439.07; (2) Avoidance of Constructive Fraudulent Transfer under 11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and § 3439.07; (3) Conspiracy To Defraud under 11 U.S.C. § 105(a); (4) Recovery of Illegal Dividends under Cal. Corp. Code §§ 500, 501 and 506; (5) Breach of Fiduciary Duty; and (6) Recovery of Avoided Transfer under 11 U.S.C. § 550(a)," initiating Adversary Case No.: 2:19-ap-01402-ER (the "K. Hwang Adversary").

The K. Hwang Adversary alleges that the Keystone Debtor made pre-petition payments to Mr. Hwang totaling at least $49,500 during the four-year period prior to the Petition Date that are avoidable as either actual or constructive fraudulent transfers and subject to recovery by the Trustee.  The K. Hwang Adversary further seeks damages of at least $5,000,000 against Mr. Hwang for breach of fiduciary duty and other damages according to proof for Conspiracy to Defraud, Recovery of Illegal Dividends.

3. _Mastan v. U.S. Bank, N.A., Kenny Hwang, et. al., Adversary No. 2:19-ap-01385-ER_

On September 13, 2019, the Trustee commenced an adversary proceeding against Mr. Hwang and U.S. Bank, N.A. ("US Bank"), and other individual defendants, by filing a "Complaint For: (1) Avoidance Of Actual Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(A); Cal. Civ. Code § 3439.04]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(B); Cal. Civ. Code § 3439.05]; and

(3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]," initiating Adversary Case No.: 2:19-ap-01385-ER (the "US Bank Adversary").

The US Bank Adversary alleges that the Keystone Debtor made pre-petition payments to US Bank totaling $273,151.04 for the benefit of Mr. Hwang during the four-year period prior to the Petition Date that are avoidable as either actual or constructive fraudulent transfers and subject to recovery by the Trustee.

The Trustee obtained Default Judgment against US Bank on October 13, 2020, and the other third-party defendants in this action have been dismissed.

4. *Mastan v. HSBC Bank USA, N.A., Kenny Hwang, et. al., Adversary No. 2:19-ap-01386-ER*

On September 13, 2019, the Trustee commenced an adversary proceeding against Mr. Hwang, HSBC Bank USA, N.A. ("HSBC"), and Jason Cho ("J.Cho") by filing a "Complaint For: (1) Avoidance Of Actual Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(A); Cal. Civ. Code § 3439.04]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(B); Cal. Civ. Code § 3439.05]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]," initiating Adversary Case No.: 2:19-ap-01386-ER (the "HSBC Adversary").

The HSBC Adversary, alleges that the Keystone Debtor made pre-petition payments to HSBC totaling $94,880.01 for the benefit of Mr. Hwang during the four-year period prior to the Petition Date that are avoidable as either actual or constructive fraudulent transfers and subject to recovery by the Trustee.

The Trustee settled the claims against HSBC and J.Cho for $15,000, which settlement was approved on September 29, 2020, and HSBC and J.Cho have been dismissed from the HSBC Adversary.

5. *Mastan v. JP Morgan Chase Bank, N.A., Kenny Hwang, et. al., Adversary No. 2:19-ap-01391-ER*

On September 13, 2019, the Trustee commenced an adversary proceeding against JP Morgan Chase Bank, N.A. ("Chase"), and Mr. Hwang by filing a "Complaint

1  For: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(A)

2  and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of

3  Constructive Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a), and Cal.

4  Civ. Code §§ 3439.04(b) or 3439.05 and § 3439.07]; and (3) Recovery of Avoided

5  Transfer [11 U.S.C. § 550(a)]," initiating Adversary Case No.: 2:19-ap-01391-ER (the

6  "Chase Tbetty Adversary").

7          Chase Tbetty Adversary alleges that the Tbetty Debtor made pre-petition

8  payments to Chase totaling $191,046.79 for the benefit of Mr. Hwang during the four-

9  year period prior to the Petition Date that are avoidable as either actual or constructive

10 fraudulent transfers and subject to recovery by the Trustee.

11         The Trustee settled his claims against Chase for $105,000, which settlement

12 was approved by the Court on August 10, 2020, and Chase was subsequently

13 dismissed from the Chase Tbetty Adversary.

14     6.  *Mastan v. JP Morgan Chase Bank, N.A., Kenny Hwang, Mirea Hwang et. al.,*

15         *Adversary No. 2:19-ap-01395-ER*

16         On September 14, 2019, the Trustee commenced an adversary proceeding

17 against Chase, Mr. Hwang, Mirea, and Hee Jung Lee ("Lee")[4] by filing a "Complaint

18 For: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(A)

19 and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of

20 Constructive Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a), and Cal.

21 Civ. Code §§ 3439.04(b) or 3439.05 and § 3439.07]; and (3) Recovery of Avoided

22 Transfer [11 U.S.C. § 550(a)]," initiating Adversary Case No.: 2:19-ap-01395-ER (the

23 "Chase Keystone Adversary").

24         The Chase Keystone Adversary alleges that the Keystone Debtor made pre-

25 petition payments to Chase totaling $317,563.39 for the benefit of Mr. Hwang during

26 the four-year period prior to the Petition Date that are avoidable as either actual or

27 constructive fraudulent transfers and subject to recovery by the Trustee.

28
---
[4] The Trustee's claims against Lee were voluntarily dismissed on December 27, 2019.

The Trustee settled his claims against Chase for $150,000, which settlement was approved by the Court on August 10, 2020, and Chase was subsequently dismissed from the Chase Keystone Adversary.

7. _Mastan v. Mirea Hwang, et. al., Adversary No. 2:19-ap-01400-ER_

On September 14, 2019, the Trustee commenced an adversary proceeding against Mirea by filing a "Complaint For: (1) Avoidance Of Actual Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(A), 550(a); and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a); Cal. Civ. Code §§ 3439.04(b) or 3439.05 & 3439.07]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]," initiating Adversary Case No.: 2:19-ap-01400-ER (the "Mirea Adversary").

The Mirea Adversary alleges that the Keystone Debtor made pre-petition payments to Mirea totaling $91,211.30 during the four-year period prior to the Petition Date that are avoidable as either actual or constructive fraudulent transfers and subject to recovery by the Trustee.

8. _Mastan v. In Young Hwang, Danielle Steckler dba Paper Palate and Twig & Twine, Inc,. Adversary No. 2:19-ap-01393-ER_

On September 13, 2019, the Trustee commenced an adversary proceeding against In Young, Paper Palate, and Twig & Twine (collectively, the In Young Defendants") by filing a "Complaint for: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. 544(b) 548(a)(1)(A) and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfers[11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and § 3439.07]; and Recovery of Avoided Transfer [11 U.S.C.§ 550(a)]," initiating Adversary Case No.: 2:19-ap-01393-ER (the "In Young Adversary").

The In Young Adversary alleges that the Keystone Debtor transferred approximately $62,000 to or for the benefit of the In Young Defendants during the four-year period prior to the Petition Date (the "Transfers"). The Transfers consist of

1   $25,000 paid directly to In Young (the "Loan Transfer") and approximately $40,000 paid

2   by the Debtor for services provided at In Young's wedding (the "Wedding Transfers,"

3   together with the Loan Transfer, the "In Young Transfers").   The Wedding Transfers

4   also include $16,254.00 paid directly to Paper Palate (the "Paper Transfers") and

5   $7,864.35 paid to Twig & Twine ("Twig Transfers") for services provided at In Young's

6   wedding (the In Young Transfers, Paper Transfers, and Twig Transfers are collectively

7   referred to herein as the "Wedding Transfers").   The Trustee alleges that the In Young

8   Wedding Transfers are avoidable as either actual or constructive fraudulent transfers

9   pursuant to 11 U.S.C. 544(b), 548, and Cal. Civ. Code §§ 3439.04, 3439.05 and

10  3439.07 and subject to recovery by the Trustee.

11         On October 16, 2019, the In Young filed a Motion to Dismiss the In Young

12  Adversary for failure to state a claim upon which relief can be granted (the "Dismissal

13  Motion"), which was opposed by the Trustee.   On December 11, 2019, the Court

14  entered an order on the Dismissal Motion granting in part and denying in part (the

15  "Order").   The Order dismissed the allegations against In Young with respect to the

16  Wedding Transfers without leave to amend and denied the balance of the allegations in

17  the Dismissal Motion.   The Wedding Defendants were not parties to the Dismissal

18  Motion.

19      9.  *Mastan v. Flintridge Preparatory School, Inc,. Nam Soo Hwang, Jae Young*

20          *Hwang et. al., Adversary No. 2:19-ap-01392-ER*

21         On September 13, 2019, the Trustee commenced an adversary proceeding

22  against Flintridge Preparatory School, Inc. ("Flintridge"), Nam Soo, Jae Young, and

23  other individual defendants' by filing a "Complaint For: (1) Avoidance Of Actual

24  Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550(a), and Cal. Civ. Code

25  §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfer [11

26  U.S.C. §§ 544(b), 548(a)(1)(B), 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05

27  and § 3439.07]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]" initiating

28  Adversary Case No. 2:19-ap-01392-ER (the "Flintridge Adversary").

On January 31, 2020, the Trustee filed a First Amended Complaint in the Flintridge Adversary for: (1) Avoidance of Actual Fraudulent Transfer [11 U.S.C. §§ 544, 548(a)(1)(A), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§ 544, 548(a)(1)(B), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and § 3439.07]; (3) Recovery of Avoided Transfer [11 U.S.C. § 550]; and Preservation of Avoided Transfer [11 U.S.C. § 551].

The Flintridge Adversary alleges that, during the four-year period prior to the Petition Date, the Keystone Debtor made pre-petition payments to Nam Soo totaling $79,781.82, to Nam Soo's closely held corporate entity, Sein International, Inc., totaling $900,061.45 that Nam Soo endorsed and cashed using one or more check cashing agencies, and to Jae Young totaling $13,928 that are avoidable as either actual or constructive fraudulent transfers pursuant to 11 U.S.C. 544(b), 548, and Cal. Civ. Code §§ 3439.04 or 3439.05 and § 3439.07 and subject to recovery by the Trustee.

The Trustee settled his claims against Flintridge for $56,047.50, which settlement was approved May 14, 2020. Following approval of the settlement, Flintridge was dismissed with prejudice, and only the claims against Nam Soo and Jae Young remain pending in the Flintridge Adversary.

10. *Mastan v. Hyun Hwang, et. al., Adversary No. 2:19-ap-01399-ER*

On September 14, 2019, the Trustee commenced an adversary proceeding against Hyun by filing a "Complaint For: (1) Avoidance of Actual Fraudulent Transfer under 11 U.S.C. §§ 544(b), 548(a)(1)(A), 550(a); and Cal. Civ. Code §§ 3439.04(a) and 3439.07; (2) Avoidance of Constructive Fraudulent Transfer under 11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and § 3439.07; and (3) Recovery of Avoided Transfer under 11 U.S.C. § 550(a)" initiating Adversary Case No. 2:19-ap-01399-ER (the "Hyun Adversary").

The Hyun Adversary alleges that the Keystone Debtor made pre-petition payments to Hyun totaling at least $50,000 during the four-year period prior to the

14

1   Petition Date that are avoidable as either actual or constructive fraudulent transfers and

2   subject to recovery by the Trustee.

3       **D.      Events Following the Commencement of the Hwang Adversaries**

4           On October 14, 2019, counsel for Plaintiff received notice that Mr. Hwang filed

5   an individual Chapter 7 Bankruptcy Case on September 18, 2019 (Case No.: 2:19-bk-

6   21045-BR).    As a result, The Trustee's claims against Mr. Hwang and Mirea were

7   stayed pursuant to 11 U.S.C. § 362.

8           Following the filing of the Hwang Adversaries, the parties exchanged documents

9   relating to the claims against the Defendants and commenced settlement negotiations,

10  which were ongoing over an approximate one-year period.    The Defendants have

11  denied and continue to deny the claims of the Trustee.    The Trustee and the

12  Defendants desire to globally settle the Hwang Adversaries to avoid the burden,

13  expense, and uncertainty of continuing litigation.

14          During this same period, the Trustee and Pacific entered voluntary settlement

15  negotiations relating to the enforceability of Pacific's secured claim against the

16  Glendale Property.    The proposed settlement with Pacific is an integral part of the

17  global resolution against the Defendants as it allows the Trustee to liquidate the

18  Glendale Property.

19      **E. Summary of Proposed Settlement Terms**

20      *1.  The Hwang Agreement*

21          Pursuant to the proposed Hwang Agreement, the parties propose to

22  compromise and fully resolve all issues, disputes, liabilities, and claims existing

23  between them as follows:[5]

24      • Entry of a Stipulated Final Judgment in the Tri Blossom Adversary avoiding and
            recovering the transfer of the Glendale Property to Tri Blossom for the benefit of
25          the Tbetty Estate under 11 U.S.C. §§ 548(a)(1)(B), 550, and 551, and for
            turnover of the Glendale Property to the Trustee pursuant to 11 U.S.C. § 542;
26

27  _____

28  [5] All interested parties are advised to consult the Agreements for all terms and
    conditions.  The statements contained herein are only a summary of the proposed
    settlement terms and conditions.

- Tri Blossom shall execute a Quitclaim Deed transferring its interest in the Glendale Property to the Trustee for the Tbetty Estate;

- The Hwang Defendants shall turnover the Glendale Property to the Trustee within fifteen (15) days of the date the Bankruptcy Court enters a "Final Order" approving the Compromise Motion (the "Turnover Deadline");

- The Approval Order may include terms for a Writ or Order, for the United States Marshall Service to assist the Trustee to enforce the Approval Order awarding possession of the Glendale Property to the Trustee;

- The Hwang Defendants shall pay to the Trustee the total sum of $7,000 (the "Payment").

- The parties shall exchange mutual releases of claims, including a waiver of unknown claims under C.C.P. § 1542; and

- Dismissal of the Defendants from the Hwang Adversaries with prejudice.

Following approval of the Compromise Motion, the Trustee shall seek to market and sell the Glendale Property pursuant to 11 U.S.C. § 363 for the benefit of the Estates. The sale of the Glendale Property is estimated to generate net proceeds of approximately $161,000 to $193,000.

The Trustee is also requesting approval to divide the net proceeds from the sale of the Glendale Property and the Payment 50/50 between the Estates.

### 2. *The Pacific Agreement*

- The Trustee shall pay Pacific the total sum of twenty-five thousand dollars ($25,000.00) (the "Settlement Payment") from the net sale proceeds of the Glendale Property in exchange for the satisfaction and release of Pacific's asserted lien against the Glendale Property. The Settlement Payment shall be paid to Pacific through escrow at the close of the sale of the Glendale Property.

- Pacific shall consent to the Trustee's sale of the Glendale Property free and clear of its asserted security interest pursuant to 11 U.S.C. § 363(f)(2). To the extent the $25,000.00 in net proceeds is not available at the close of the sale of the Glendale Property, Pacific shall have an administrative claim against the Keystone Estate for any unpaid portion of the Settlement Payment.

- Pacific shall have the right to amend the Milberg Claim to assert a general unsecured claim in the Keystone Bankruptcy Case on account of the Judgment, as reduced by the Settlement Payment in the amount of $261,960.34 (the

"Amended Pacific Claim").  The Trustee shall not object to the Amended Pacific Claim; and

• The parties shall exchange mutual releases of claims.

### III.

### <u>ARGUMENT</u>

A. <u>The Trustee is Authorized to Enter Into the Compromises Represented by the Agreements and Notice of the Relief Sought is Proper</u>

Federal Rule of Bankruptcy Procedure 9019(a) authorizes the Court to approve a compromise or settlement upon a trustee's motion and directs that notice of the motion be provided in accordance with F.R.B.P. 2002 and may be noticed according to L.B.R. 9013-1(o).  In conjunction with F.R.B.P. 2002(a)(6), L.B.R. 9013-1(o) dictates that all creditors shall receive no less than fourteen (14) days' notice by mail of an opportunity to request a hearing date.

In the instant case, a notice of motion that summarizes the relief sought by the Compromise Motion was served upon all creditors of both of the Estates, as well as any parties requesting special notice, concurrently with the filing of this Compromise Motion in accordance with the notice provisions of L.B.R. 9013-1(o).  The Trustee expects no opposition to the Compromise Motion.  Accordingly, the Trustee respectfully requests that the Court enter an order finding that notice is sufficient to creditors for purposes of this Compromise Motion.

B. <u>The Compromises Represented by the Agreements Should be Approved</u>

It is well established that settlements are favored over continued litigation.  <u>See</u>, <u>e.g.</u>, <u>Martin v. Kane (In re A & C Properties)</u>, 784 F.2d 1377, 1384 (9th Cir. 1986) (recognizing that "the law favors compromise and not litigation for its own sake"); <u>Port O'Call Investment Co. v. Blair (In re Blair)</u>, 538 F.2d 849, 851 (9th Cir. 1976) (same); <u>Magill v. Springfield Marine Bank (In re Heissenger Resources, Ltd.)</u>, 67 B.R. 378, 382

1 (C.D. Ill. 1986) ("Settlement is intended to conserve  . . . [scarce judicial resources], and

2 is therefore encouraged").  Accordingly, in approving a settlement agreement, the court

3 need not conduct an exhaustive investigation of the claims sought to be compromised.

4 See United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328

5 (9th Cir. 1982).  Rather, it is sufficient that the court find that the settlement is "fair and

6 equitable," negotiated in good faith and reasonably believed to be the best compromise

7 negotiable under the circumstances.  See In re A & C Properties, 784 F.2d at 1381.  "In

8 determining the fairness, reasonableness and adequacy of a proposed settlement

9 agreement, the court must consider: (a) the probability of successful litigation; (b) any

10 impediments to collection; (c) the complexity, expense, inconvenience and delay of

11 litigation; and (d) the interest of creditors, with deference to their reasonable opinions."

12 Id.   The focus of inquiry in reviewing and approving compromises is whether the

13 settlement is reasonable under the particular circumstances of the case.   Official

14 Creditors Comm. v. The Beverly Almont Company (In re the General Store of Beverly

15 Hills), 11 B.R. 539, 542 (B.A.P. 9th Cir. 1981).  Further, the Court is not required to hold

16 a full evidentiary hearing or a mini trial before it can approve a compromise.  The Court

17 need only canvas the issues to see if the settlement falls below the lowest point of

18 reasonableness. 10 Collier on Bankruptcy, 16th Ed., ¶ 9019.02, citing In re Drexel

19 Burnham Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991) (quoting In re W.T.

20 Grant Co., 699 F.2d 599, 608 (2d Cir.); In re Doctors Hospital of Hyde Park, Inc., 474

21 F.3d 421, 428-30 (7th Cir. 2007); Spirtos v. Ray (In re Spirtos), 2006 Bankr. LEXIS

22 4894 at *32 (B.A.P. 9th Cir. May 19, 2006); In re Heissenger, 67 B.R. at 383.

23        Based upon an analysis of the foregoing factors, the Court should conclude that

24 the terms of the Agreements are fair and equitable, and well within the range of

25 reasonableness.

26        **1.  The Probability of Success on the Merits Favors Settlement**

27        Although the Trustee is confident that his position is well-founded legally, there

28 is always a risk associated with litigation, and counsel for the Trustee disagrees with

the Defendants on the likely result of the Hwang Adversaries.  While the Trustee is confident that he would prevail, at least in part, in his actions to establish that all or a portion of the amounts at issue in each of the Hwang Adversaries (respectively), are avoidable as a fraudulent transfers or preferences and would also on the claims against Mr. Hwang for breach of fiduciary duty, conspiracy to defraud and recovery of Illegal dividends, litigation inherently has an uncertain outcome.  Moreover, the Defendants maintain that the underlying transfers are defensible.  The evidentiary burden in each of the Hwang Adversaries is on the Trustee, and development of the necessary evidence would be difficult and expensive, resulting in protracted litigation.

Regarding the proposed compromise with Pacific, the Trustee has determined, in his business judgment, that litigation concerning the enforceability of the Pacific Writ would be expensive and the risk and delay of such litigation would not provide any additional benefit to the Estates than if the proposed settlement is approved.

The Trustee has therefore determined, in his sound business judgment, that the proposed settlements, as memorialized in the Agreements, represent reasonable compromises that minimize the risks and costs of litigation.

### 2.  The Difficulties of Collection Favor the Proposed Settlements

In analyzing the benefit of a proposed settlement, the Trustee always takes into account the ability to collect any judgment from the defending party.[6]  Here, the Trustee believes that collection against the Defendants would be difficult, and there is a substantial risk that any judgment obtained would not be collectable.  As part of his investigation in the Bankruptcy Cases, the Trustee investigated each of the individual Hwang Defendants, including but not limited to, asset searches performed through LexisNexis, and review of documents and financial information obtained during the litigation or as part of settlement negotiations.  Moreover, in September 2019, Mr.

---

[6] This element does not have bearing on the analysis of the benefits of the Pacific Settlement.

1 Hwang filed an individual chapter 7 petition (the "Hwang Bankruptcy") that was
2 determined to be a no asset case.  The Trustee reviewed the petition and schedules,
3 pleadings, and Mr. Hwang's 341(a) testimony in the Hwang Bankruptcy, as well as
4 bank statements, tax returns, and other financial records of Mr. Hwang and Mirea, and
5 conferred with Jason M. Rund, the chapter 7 trustee in the Hwang Bankruptcy, and his
6 proposed special counsel regarding Mr. Hwang and Mirea's financial condition.  The
7 Trustee also reviewed recent judgment debtor examinations of Mr. Hwang, Mirea, and
8 Hyun taken as part of Milberg/Pacific's unsuccessful collection efforts in the Action.
9 The Trustee is also informed that Young Jae is a student in his early twenties, without
10 any apparent assets from which a judgment could be paid.   Considering all the
11 circumstances as a whole, the Trustee determined that it is unlikely that the individual
12 Hwang Defendants could satisfy a substantial judgment.  Regardless, the fees and
13 costs of collection against individual judgment debtors would cause the Estates to incur
14 additional, potentially substantial, administrative expenses, with no assurance that
15 collection would ever occur.  Furthermore, the Glendale Property is the only asset of Tri
16 Blossom, and the Agreements provide for the Trustee to recover and liquidate the
17 Glendale Property for the benefit of the Estates.

18     The Wedding Defendants are both small businesses and collection would be
19 difficult, especially given the current financial climate and the impact COVID-19 has
20 had on small businesses and the wedding/event industry in particular.  The Trustee
21 further believes that given the small amounts at issue against the Wedding Defendants,
22 the costs of collection would outweigh any additional benefit to the Estates.

23     The proposed settlements remove the difficulties and uncertainty of collection,
24 and as indicated above, the expense of obtaining the judgment through further
25 litigation, combined with the costs of any collection efforts, would outweigh the
26 additional benefit to the Estates.

27     As such, collection is far more assured under the Agreements, and this factor
28 also favors approval of the Agreements.

**3.**  **The Complexity, Expense, Inconvenience, and Delay of the Litigation Involved Favors Approval of the Settlements**

While the legal issues involved in the Hwang Adversaries are not necessarily complex, the factual issues are intensive, and litigating these matters would be difficult and expensive, and the outcome could not be guaranteed.   To continue with the litigation, the Trustee would have to incur a significant amount of fees and costs to engage in further discovery, retain experts to determine the historic value the Debtors' assets, retain an expert to perform a solvency analysis as of the time of each of the transfers, depose the Defendants, their expert, as well as the Debtors, attend trial, and engage in collection efforts on any judgment, all of which costs would be borne by the Estates.

Considering these difficulties and risks, the Trustee believes that globally settling the Hwang Adversaries and the dispute with Pacific, as outlined above, is in the best interest of the Estates and the Debtors' creditors.  The proposed settlements will allow the Trustee to efficiently liquidate the Glendale Property and provide a source of funds to pay creditors.  The Agreements will therefore further judicial economy.

Accordingly, this factor also favors approval of the Agreements.

**4.**  **The Paramount Interest of Creditors favors Settlements**

The Trustee believes that the proposed settlements are in the best interest of the Estates' creditors for at least the following reasons: (1) the settlements resolve all litigation against the Defendants, thereby reducing litigation expenses that are borne by the Estates; (2) the settlements avoid the risk of an unfavorable outcome, pursuant to which the Estates could potentially recover nothing; (3) the settlements are reasonable compromises given the Trustee's assessments of the claims; and (4) resolving these disputes in the proposed manner will result in the Estates maximizing limited resources for the benefit of creditors by avoiding unnecessary litigation costs.

The Agreements were negotiated at arm's length and in good faith and are the product of extensive discussions by the parties through their respective counsel.

1    Furthermore, the Trustee does not anticipate any opposition to approval of the

2    Agreements because the proposed settlements are fair, reasonable, and will provide

3    for a more efficient and cost-effective administration of the Estates.    Therefore, the

4    proposed settlements will serve the best interests of the Estates and its creditors.

5    **IV.**

6    **<u>CONCLUSION</u>**

7    For the reasons set forth above, the Trustee respectfully requests that the Court

8    enter an order:

9    1.    Granting this Compromise Motion;

10    2.    Approving the Agreements attached hereto as **<u>Exhibits A and B</u>**;

11    3.    Authorizing the division of proceeds received under the Agreements to be

12    split 50/50 between the Estates;

13    4.    Authorizing the Trustee to take any and all steps necessary to effectuate

14    the Agreements; and

15    5.    Granting such other and further relief as the Court deems just and proper

16    under the circumstances.

17
DATED: November 30, 2020                    **MARGULIES FAITH, LLP**

18

19                                        By:   */s/ Meghann A. Triplett*
                                            Meghann A. Triplett
20                                          Attorneys for Chapter 7 Trustee,
                                            Peter J. Mastan
21

22

23

24

25

26

27

28

22

1

## <u>DECLARATION OF PETER J. MASTAN</u>

2

I, Peter J. Mastan, declare as follows:

3

1.      I make this declaration in support of the "Omnibus Motion for Order

4

Authorizing the Trustee to Settle Certain Adversary Actions Pursuant to F.R.B.P. 9019"

5

(the "Compromise Motion"), to which this declaration is affixed.   Unless otherwise

6

stated, defined terms in the Compromise Motion shall have the same meaning herein.

7

2.      I am the duly appointed and acting Chapter 7 trustee for the for the

8

bankruptcy estates of Keystone Textile, Inc. (the "Keystone Estate") and Tbetty, Inc.

9

(the "Tbetty Estate," together with the Keystone Estate, the "Estates") under 11 U.S.C.

10

§ 702.

11

3.      By the attached Compromise Motion, I am requesting authority to enter

12

into the proposed "Global Settlement Agreement and Mutual General Release" (the

13

"Hwang Agreement") resolving ten (10) separate adversary proceedings against one or

14

more of the Defendants.  A true and correct copy of the Hwang Agreement is attached

15

as **Exhibit A**.

16

4.      The Hwang Agreement provides for entry of a stipulated judgment in the

17

Tri Blossom Adversary avoiding the Tri Blossom Transfer, recovering the Glendale

18

Property for the benefit of the Estates, directing the turnover of the Glendale Property,

19

and a cash payment of $7,000 (the "Payment").  Following approval of the Compromise

20

Motion, I will seek to employ a real estate broker to market and sell the Glendale

21

Property pursuant to 11 U.S.C. § 363.

22

5.      The proposed compromise also includes a dismissal of the non-insider

23

co-defendants Twig & Twine (florist) and Paper Palate (caterer) (together, the

24

"Wedding Defendants") in the In Young Adversary for avoidance and recovery of

25

approximately $21,000 in transfers from the Keystone Debtor for services performed at

26

In Young's wedding.

27

28

6.    I estimate that the sale of the Glendale Property will generate net proceeds of approximately $161,000-$193,000 for the Estates.

7.    The above estimate includes hypothetical payment of the contested $300,000 note held by K2 America, Inc. (the "K2 Note") and secured against the Glendale Property which I believe was perfected in bad faith and is subject to avoidance.  I will seek to sell the Glendale Property free and clear of the K2 Note as a contested lien under 11 U.S.C. § 363(f)(4).

8.    I am also requesting authority to divide all proceeds received under the Agreements, including the proceeds from the sale of the Glendale Property 50/50 between the Estates.

9.    I am also requesting authority to enter into the proposed compromise reached with Pacific regarding its asserted judgment lien against the Glendale Property.  A true and correct copy of the "Settlement Agreement and Mutual Release" reached with Pacific (the "Pacific Agreement," together with the Hwang Agreement, the "Agreements") is attached as **Exhibit B**.

10.    The Pacific Agreement resolves all disputes with respect to the enforceability of the Pacific Writ and provides for release of the Pacific Writ in exchange for a payment of $25,000 to Pacific from the sale proceeds of the Glendale Property, as well as an allowed claim in the Keystone Bankruptcy Case.  The settlement with Pacific in conjunction with the Hwang Agreement allows me to expeditiously liquidate the Glendale Property and avoids the risk, expense, and delay of contesting the Pacific Writ.  Moreover, if the Pacific Writ were enforceable, there would be no equity in the Glendale Property above the other estimated secured liens.

11.    It is my business judgment that the Agreements yield the best result for the Estates and its creditors.  After considering among other factors, the expense and risks associated with litigation, I entered into settlement negotiations through my counsel as to the claims against the Defendants in the Hwang Adversaries and

1  Pacific's secured claim against the Glendale Property.  The negotiations resulted in

2  mutually agreeable resolutions memorialized by the Agreements.

3      12.    The proposed Agreements were negotiated in good faith, at arms' length,

4  and there are no undisclosed terms.

5      13.    In evaluating the proposed Agreements, my counsel and I have taken into

6  account the probabilities of success of litigation, the complexity of the litigation involved

7  and the expenses, inconvenience, and delay necessarily resulting from such litigation,

8  as well as the interest of creditors of the Estates.  I have determined that the fees and

9  costs of continued litigation would be substantial and would unnecessarily dilute any

10  recovery obtained for the benefit of the Estates.  Moreover, I believe that collection

11  against the Defendants would be difficult, and there is a substantial risk that any

12  judgments obtained would not be collectable.  As such, there is no certainty the result

13  from continued litigation would be better than the Agreements achieved.

14      14.    I evaluated the proposed Agreements and in my business judgment and

15  experience as a trustee, I believe the Agreements are fair and reasonable and in the

16  best interests of the Estates and the creditors of the Debtors.

17      15.    The proposed Agreements are sound business decisions because they

18  provide for the recovery and liquidation of the Glendale Property for the benefit of the

19  Estates and avoid the risk and expense of continued litigation.

20      16.    I believe that it is in the best interest of the Estates to proceed with the

21  Agreements as set forth in the Compromise Motion.

22      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

23  foregoing is true and correct.  Executed November 30, 2020 in Los Angeles, California

24

25  _____

26  Peter J. Mastan

27

28

# Exhibit A

## GLOBAL SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Global Settlement Agreement and Mutual General Release (the "Settlement Agreement") is dated September \_\_\_, 2020 and is entered into by and between Kenny Hwang ("Mr. Hwang"), Mirea Hwang ("Mirea"), Hyun Hwang ("Hyun"), Nam Soo Hwang ("Nam Soo"), Young Jae Hwang ("Young Jae"), In Young Hwang ("InYoung"), Tri. Blossom, LLC ("Tri Blossom") (together, the "Hwang Defendants"), Twig & Twine, Inc., ("Twig & Twine") Danielle Steckler dba Paper Palate ("Paper Palate") (collectively, the with the Hwang Defendants, the "Defendants") on the one hand, and Peter J. Mastan, Chapter 7 Trustee (the "Trustee") for the bankruptcy estates of Keystone Textile, Inc. (the "Keystone Estate") and Tbetty, Inc. (the "Tbetty Estate," together with the Keystone Estate, the "Estates") on the other hand. The Defendants and the Trustee may hereafter be referred to collectively as the "Parties," and each individually, a "Party."

## RECITALS

This Settlement Agreement is made with reference to the following recital of essential facts:

A.  In March 2017, Mirea and Hyun purchased the real property commonly known as 3512 Buena Vista Ave., Glendale, CA 91208-1204, Assessor's Parcel Number: 5615-005-013 (the "Glendale Property") for approximately $1,370,000, with a $770,000 cash down payment (the "Down Payment").

B.  On March 8, 2017, a Grant Deed was recorded vesting title in the Glendale Property with "Hyun Hwang, a single woman, and Mirea Hwang, a married woman as her some and separate property as joint tenants" (the "Hwang Grant Deed").

C.  Concurrently with the Hwang Grant Deed, a Quitclaim Deed was recorded as Instrument No. 20170268286 forever releasing any interest of Mirea's spouse Kenny Hwang ("Mr. Hwang") in the Glendale Property to Mirea as her sole and separate property (the "Hwang Quitclaim").

D.  A Deed of Trust was also recorded on March 8, 2017 as Instrument No. 20170268288 to secure the repayment of a $636,000 loan against the Glendale Property (the "Loan"). Mirea and Hyun were the borrowers under the Loan. As of August 5, 2020, the balance on the Loan is approximately $608,000.

E.  On August 4, 2017, Mirea and Hyun recorded a Grant Deed transferring title of the Glendale Property to Tri. Blossom LLC, a California Limited Liability Company ("Tri Blossom") as Instrument No. 20170883590 for no consideration. Mirea and Hyun were the managing members of Tri Blossom.

F.  On September 11, 2017, Tri Blossom, through Mirea and Hyun caused a Deed of Trust and Assignment of Rents to be recorded against the Glendale Property securing a $300,000 note in favor of General Business Credit ("GBC") which was recorded as Instrument No. 17-1025249 of Official Records (the "GBC Note"). As of August 5, 2020, the balance on the GBC Note is approximately, $139,000.

G.  Also on September 11, 2017, Tri Blossom, through Mirea and Hyun caused a Short Form Deed of Trust and Assignment of Rents to be recorded against the Glendale Property securing a $300,000 note in favor of K2 America, Inc. a California Corporation ("K2 America") which was recorded as Instrument No. 17-1030312 of Official Records (the "K2 Note").

H.  On September 14, 2017 (the "Petition Date"), Tbetty, Inc. (the "Tbetty Debtor") filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code before the United States Bankruptcy Court for the Central District of California, initiating the Chapter 7 case identified as *In re Tbetty, Inc.*, Bankruptcy Case Number 2:17-bk-21275-ER (the "Tbetty Bankruptcy Case").

I.  That same day, Mr. Hwang's related entity Keystone Textile, Inc. (the "Keystone Debtor") filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code before the United States Bankruptcy Court for the Central District of California, initiating the Chapter 7 case identified as *In re Keystone Textile, Inc.*, Bankruptcy Case Number 2:17-bk-21270-ER (the "Keystone Bankruptcy Case," together with the Tbetty Bankruptcy Case, the "Bankruptcy Cases").  The Keystone Debtor and the Tbetty Debtor are collectively referred to as the "Debtors".

J.  At all relevant times, Mr. Hwang was the person-in-charge of the Debtors, and had access to, and exercised control over the Debtors and the Debtors' bank accounts.

K.  Shortly after the Bankruptcy Cases were filed, the Trustee was appointed to administer the Debtors' Estates.

L.  Pursuant to his statutory duties in the Bankruptcy Cases, the Trustee commenced the ten adversary proceedings described below against one or more of the Defendants (collectively, referred to herein as the "Hwang Adversaries") to pursue recovery of certain transfers the Trustee believed to be subject to avoidance under 11 U.S.C. §§ 544, 547, and 548 as well as other pre-petition claims of the Estates as detailed below for settlement purposes only.

M.  The Defendants dispute the claims of the Trustee and contend that the claims identified in the Hwang Adversaries are subject to applicable defenses.

*Mastan v. K2 America, Inc., Kenny Hwang, Mirea Hwang, Tri Blossom, LLC, et. al.,* Adversary No. 2:19-ap-01404-ER

N.  On September 15, 2019, the Trustee commenced an adversary proceeding against Mr. Hwang, Mirea, Hyun, Tri Blossom (collectively, the "Tri Blossom Defendants"), and other named defendants by filing a "Complaint for: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. 544(b) 548(a)(1)(A) and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; (3) Avoidance of Preferential Transfers [11 U.S.C. § 547]; (4) Recovery from Subsequent Transferee [11 U.S.C. §§ 544, 548]; (5) Recovery of Avoided Transfers [11 U.S.C.§ 550(a)(2)]; (6) Conspiracy to Defraud [11 U.S.C. § 105(a)]; (7) For Recovery of Illegal Dividends [Cal. Corp. Code §§ 500, 501 and 506]; and (8) For Unjust Enrichment" thereby initiating Adversary Case No. 2:19-ap-01404-ER (the "Tri Blossom Adversary").

O.  In the context of the Tri Blossom Adversary, among other claims, the Trustee alleged that during the four-year period prior to the Petition Date in the Tbetty Bankruptcy Case, Mr. Hwang failed to keep complete and/or accurate accounting records of the Tbetty Debtor, commingled funds, deposited, transferred, and disbursed monies of the Tbetty Debtor as he saw fit to or for the benefit of one or more of the defendants in a continuous and cumulative pattern of tortious conduct.

P.  The Trustee further alleged that the Down Payment for the Glendale Property was fraudulently transferred from the Tbetty Debtor for no consideration for the benefit of the Tri Blossom Defendants and that the Glendale Transfer part of a larger pattern of transferring assets from the Tbetty Debtor to or for the benefit of the Tri Blossom Defendants. The Trustee contends that as a result of the above listed transactions, the Tbetty Debtor holds either legal or equitable title to the Glendale Property: (i) the funds for the Glendale Transfer can be traced back to the Tbetty Debtor; (ii) the Tri Blossom Defendants who are insiders of the Tbetty Debtor and specifically Mr. Hwang who is its President/Person-In-Charge directed all aspects of the purchase of the Glendale Property; (iii) defendants Mirea and Hyun paid nothing for the Glendale Property and did not maintain any true authority over the same; (iv) the Debtor or its affiliates paid some or all of the debt service, real estate taxes, and maintenance costs on the Glendale Property; and (v) the Tri Blossom Defendants reside in the Glendale Property.

_Mastan v. Kenny Hwang, et. al.,_ Adversary No. 2:19-ap-01402-ER

Q.  On September 14, 2019, the Trustee commenced an adversary proceeding against Mr. Hwang and other defendants by filing a "Complaint for: (1) Avoidance of Actual Fraudulent Transfer under 11 U.S.C. §§ 544(b), 548(a)(1)(A), 550(a); and Cal. Civ. Code §§ 3439.04(a) and 3439.07; (2) Avoidance of Constructive Fraudulent Transfer under 11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07; (3) Conspiracy To Defraud under 11 U.S.C. § 105(a); (4) Recovery of Illegal Dividends under Cal. Corp. Code §§ 500, 501 and 506; (5) Breach of Fiduciary Duty; and (6) Recovery of Avoided Transfer under 11 U.S.C. § 550(a)" initiating Adversary Case No.: 2:19-ap-01402-ER (the "K. Hwang Adversary").

_Mastan v. U.S. Bank, N.A., Kenny Hwang, et. al.,_ Adversary No. 2:19-ap-01385-ER

R.  On September 14, 2019, the Trustee commenced an adversary proceeding against Mr. Hwang, U.S. Bank, N.A., and other individual defendants by filing a "Complaint For: (1) Avoidance Of Actual Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(A); Cal. Civ. Code § 3439.04]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(B); Cal. Civ. Code § 3439.05]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]" initiating Adversary Case No.: 2:19-ap-01385-ER (the "US Bank Adversary").

_Mastan v. HSBC Bank USA, N.A., Kenny Hwang, et. al.,_ Adversary No. 2:19-ap-01386-ER

S.  On September 13, 2019, the Trustee commenced an adversary proceeding against Mr. Hwang, HSBC Bank USA, N.A. ("US Bank"), and other individual defendants by filing a "Complaint For: (1) Avoidance Of Actual Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(A); Cal. Civ. Code § 3439.04]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§

544(b), 548(a)(1)(B); Cal. Civ. Code § 3439.05]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]" initiating Adversary Case No.: 2:19-ap-01386-ER (the "HSBC Adversary").

*Mastan v. JP Morgan Chase Bank, N.A., Kenny Hwang, et. al.,* Adversary No. 2:19-ap-01391-ER

T.  On September 13, 2019, the Trustee commenced an adversary proceeding against JP Morgan Chase Bank, N.A. ("Chase"), Mr. Hwang and other individual defendants by filing a "Complaint For: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(A) and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]", thereby initiating Adversary Case No.: 2:19-ap-01391-ER (the "Chase Keystone Adversary").

*Mastan v. JP Morgan Chase Bank, N.A., Kenny Hwang, Mirea Hwang et. al.,* Adversary No. 2:19-ap-01395-ER

U.  On September 14, 2019, the Trustee commenced an adversary proceeding against Chase, Mr. Hwang, Mirea, and other individual defendants by filing a "Complaint For: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(A) and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]", thereby initiating Adversary Case No.: 2:19-ap-01395-ER (the "Chase Tbetty Adversary").

*Mastan v. Mirea Hwang, et. al.,* Adversary No. 2:19-ap-01400-ER

V.  On September 14, 2019, the Trustee commenced an adversary proceeding against Mirea by filing a "Complaint For: (1) Avoidance Of Actual Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(A), 550(a); and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a); Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]", thereby initiating Adversary Case No.: 2:19-ap-01400-ER (the "Mirea Adversary").

*Mastan v. InYoung Hwang, Danielle Steckler dba Paper Palate and Twig & Twine*, Adversary No. 2:19-ap-01393-ER

W.  On September 13, 2019, the Trustee commenced an adversary proceeding against InYoung Hwang, Danielle Steckler dba Paper Palate and Twig & Twine (collectively, the "Defendants") by filing a "Complaint for: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. 544(b) 548(a)(1)(A) and 550(a), and Cal.Civ.Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfers[11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; and Recovery of Avoided Transfer [11 U.S.C.§ 550(a)] initiating Adversary Case No.: 2:19-ap-01393-ER (the "InYoung Adversary").

*Mastan v. Flintridge Preparatory School, Inc. Nam Soo Hwang, Jae Young Hwang et. al.,*
Adversary No. 2:19-ap-01392-ER

X. On September 13, 2019, the Trustee commenced an adversary proceeding against Flintridge Preparatory School, Inc., Nam Soo, Jae Young, and other individual defendants' by filing a "Complaint For: (1) Avoidance Of Actual Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; and (3) Recovery of Avoided Transfer [11 U.S.C. § 550(a)]" initiating Adversary Case No. 2:19-ap-01392-ER (the "Flintridge Adversary").

Y. On January 31, 2020, the Trustee filed a First Amended Complaint in the Flintridge Adversary for: (1) Avoidance of Actual Fraudulent Transfer [11 U.S.C. §§ 544, 548(a)(1)(A), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfer [11 U.S.C. §§ 544, 548(a)(1)(B), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; (3) Recovery of Avoided Transfer [11 U.S.C. § 550]; and Preservation of Avoided Transfer [11 U.S.C. § 551].

*Mastan v. Hyun Hwang, et. al.,* Adversary No. 2:19-ap-01399-ER

Z. On September 14, 2019, the Trustee commenced an adversary proceeding against Hyun by filing a "Complaint For: (1) Avoidance of Actual Fraudulent Transfer under 11 U.S.C. §§ 544(b), 548(a)(1)(A), 550(a); and Cal. Civ. Code §§ 3439.04(a) and 3439.07; (2) Avoidance of Constructive Fraudulent Transfer under 11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07; and (3) Recovery of Avoided Transfer under 11 U.S.C. § 550(a)" initiating Adversary Case No. 2:19-ap-01399-ER (the "Hyun Adversary").

AA. On October 14, 2019, counsel for Plaintiff received notice that Mr. Hwang filed an individual Chapter 7 Bankruptcy Case on September 18, 2019 (Case No.: 2:19-bk-21045-BR). As a result, The Trustee's claims against Mr. Hwang and Mirea were stayed pursuant to 11 U.S.C. § 362.

BB. The Defendants have denied and continue to deny the claims of the Trustee. The Trustee and the Defendants desire to settle the Hwang Adversaries in order to avoid the burden, expense, and uncertainty of continuing litigation.

CC. In consideration of the mutual promises set forth herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree to a resolution, as set forth herein, of the Hwang Adversaries and dismissal of the claims against the Defendants with prejudice.

## **TERMS**

1. Incorporation of Recitals. The foregoing recitals are hereby repeated and incorporated herein as though set forth in full.

2.    <u>Conditions Precedent to Effectiveness</u>.  Except as provided in paragraphs 2-8, and 10-23 below, this Settlement Agreement shall be void and of no force and effect unless and until all of the following have occurred: (a) all Parties have executed this Settlement Agreement; and (b) the Bankruptcy Court has approved this Settlement Agreement in the Bankruptcy Cases as described in Paragraph 6 of this Settlement Agreement.

3.    <u>Effective Date</u>:  The effective date of this Settlement Agreement (the "Effective Date") shall be the date the Bankruptcy Court enters a "Final Order" approving this Settlement Agreement (the "Approval Order").  The Parties consent to entry of such an order by the Bankruptcy Court.  The Approval Order does not become a Final Order unless and until (1) the time to file a timely appeal of said order under Fed.R.Bankr.P. 8002 has passed and no such timely appeal has been filed; or (2) if a timely appeal is filed, then after all timely filed appeals are dismissed with prejudice (and/or are dismissed as moot) or the Approval Order is affirmed on appeal and is not subject to further timely appellate review, whether by appeal, petition for rehearing, or petition for certiorari.  If, for any reason, the Effective Date does not occur, including, without limitation, because the Bankruptcy Court denies the Approval Motion, the Parties will return, without prejudice, to the <u>status quo ante</u> as if no settlement had been negotiated or entered into.

4.    <u>Consideration</u>:

(a) The Hwang Defendants are each jointly and severally liable and shall pay to the Trustee on behalf of the Estate, the total sum of $7,000 (the "Payment") which amount shall be paid to Peter J. Mastan, Chapter 7 Trustee on behalf of the Estates within fifteen (15) days of the Effective Date.  The Payment shall be in the form of a business or cashier's check made payable to "Peter J. Mastan, Chapter 7 Trustee," and delivered with a reference to the Bankruptcy Cases in the memo line to:

Peter J. Mastan, Chapter 7 Trustee
550 S. Hope Street, Suite 1765
Los Angeles, CA 90071

(b) Concurrent with the full execution of this Settlement Agreement, Tri Blossom will execute a "Stipulated Final Judgment" (the "Stipulated Judgment") in the Tri Blossom Adversary.  The Stipulated Judgment will provide for entry of a judgment in favor of the Trustee and against Tri Blossom avoiding and recovering the transfer of the Glendale Property to Tri Blossom for the benefit of the Tbetty Estate under 11 U.S.C. §§ 548(a)(1)(B), 550, and 551, and for turnover of the Glendale Property to the Trustee pursuant to 11 U.S.C. § 542 in the form attached hereto as <u>Exhibit 1</u>;

(c) Tri Blossom shall execute a Quitclaim Deed in front of a notary public transferring its interest in the Glendale Property to Peter J. Mastan, Chapter 7 Trustee for the Tbetty Estate in the form attached hereto as <u>Exhibit 2</u> which shall be delivered to A & A Escrow Services, Inc., c/o Antonia Delgado, Senior Escrow Officer, 415 N. Crescent Drive, Suite 320, Beverly Hills, CA 90210 within fifteen (15) days of execution of the Settlement Agreement;

(d) The Hwang Defendants shall turnover the Glendale Property to the Trustee within fifteen (15) days of the Effective Date (the "Turnover Deadline"). The personal property shall be removed from the Glendale Property by the Turnover Deadline. Any personal property remaining at the Glendale Property following the Turnover Deadline shall be deemed abandoned by the Hwang Defendants, and each of them and the Trustee may destroy, donate, or otherwise dispose of any and all such property in his sole and unfettered discretion without notice to the Hwang Defendants or any of them and the Hwang Defendants and each of them shall be jointly and severally liable to the Trustee for all costs related to that disposition; and

(e) Within fifteen (15) days of execution of the Settlement Agreement the Hwang Defendants shall provide the Trustee with evidence of liability insurance on the Glendale Property and shall keep such insurance in place through the Turnover Deadline. The Hwang Defendants further agree to not draw down on the GBC Note or further encumber the Glendale Property.

5.    Dismissal of Adversary Proceedings:    Upon the Hwang Defendants' full performance of the obligations set forth in Paragraph 4 of this Settlement Agreement, and the passing of the Effective Date as defined in Paragraph 3 above, the Trustee shall seek to dismiss the Hwang Adversaries with prejudice. A dismissal with prejudice of the Hwang Adversaries, and the release of claims, is a material consideration and inducement to the Hwang Defendants under this Agreement.

6.    Approval by the Bankruptcy Court:

(a) Following the execution of this Settlement Agreement by all Parties (without any modification or interlineation) by all Parties, the Trustee shall file a motion, under Fed.R.Bankr.P. 9019, for an order approving the Settlement Agreement in the Bankruptcy Cases (collectively, the "9019 Motion");

(b) Notwithstanding any other provision of this Settlement Agreement, if the Bankruptcy Court denies the Approval Motion in either of the Bankruptcy Cases, the Trustee shall have no obligation to appeal such denial, and if any person or entity appeals or seeks appellate review of the Approval Order or an order denying the Approval Motion, the Trustee shall have no obligation to oppose or otherwise respond to such an appeal or request for appellate review; and

(c) The Parties agree that the Approval Order may include the following provisions (or with similar wording):

1) Federal Rule of Bankruptcy Procedure 7070 shall be applicable to the 9019 Motion and all efforts to enforce the Approval Order;

2) Mr. Hwang, Mirea, Hyun, Tri Blossom, and all other persons, if any, claiming rights of possession through one or each of them with respect to the Glendale Property (collectively, the "Occupants"), shall deliver possession of the Glendale Property to the Trustee (by personally vacating the Glendale Property, removing all of their personal property from the Glendale Property, leaving the Glendale Property in broom-clean

condition, and delivering to the Trustee the keys to the Glendale Property, security codes (if any) for all security systems, and any garage door and/or driveway gate remote controls that may exist) within;

3) Any personal property remaining in or on the Glendale Property after two (2) business days after the Turnover Deadline is deemed to have been abandoned by the Occupants;

4) If the Occupants fail to timely vacate the Glendale Property, the Trustee is authorized to instruct the U.S. Marshall Service to execute this Writ or Order by (i) evicting and locking out all Occupants of the Glendale Property, (ii) using all necessary force to effectuate the eviction; and (iii) surrendering possession of the Glendale Property to the Trustee's designated custodian;

5) The Approval Order shall constitute a writ of possession and writ of assistance for the Glendale Property.  The legal address of the Glendale Property is:

LOT 13 IN BLOCK 12 OF SPARR HEIGHTS IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 59, PAGE 34 OF SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5615-005-013

6) Upon execution and entry of this Writ or Order, the United States Marshall Service (the "U.S. Marshal") is immediately directed to assist the Trustee to enforce the Approval Order awarding possession;

7) The Trustee and/or his authorized agents will act as substitute custodian of any and all items of personal property seized pursuant to the Approval Order and the U.S. Marshall shall have no liability arising from any acts, incidents, or occurrences in connection with the seizure of the personal property located at the Glendale Property arising in the ordinary authorized scope of duties of the U.S. Marshal (which acts do not include acts arising from negligent or intentional tortious conduct), including any third party claims and the U.S. Marshal shall be discharged of his or her duties and responsibilities for safekeeping of the seized goods;

8) The U.S. Marshal accomplishing such seizure shall use whatever reasonable force necessary to break open and enter the Glendale Property regardless of whether the premises or location is locked or unlocked, occupied or unoccupied and inspect the contents of any room;

9) Anyone interfering with the execution of the Approval Order shall be subject to arrest by law enforcement officials;

10) Once all Occupants of the Glendale Property have voluntarily vacated or have been forcibly removed, and the Glendale Property has been secured, the U.S. Marshal shall turn over possession of the Glendale Property to the Trustee or his authorized agent;

11) The Trustee is authorized to expend funds to (i) rent a U-Haul (or similar) moving truck, (ii) hire an agent and/or moving company (without the need of filing an employment or fee application) to facilitate the removal of any personal property at the Glendale Property, (iii) dispose of any personal property remaining at the Glendale Property, and (iv) change the locks and security codes to the Glendale Property;

12) The Trustee is authorized to remove any and all personal property remaining in or on the Glendale Property at any time beginning three (3) business days following the Turnover Deadline;

13) The Trustee, in the exercise of his discretion, is authorized either to discard or donate to a charity any and all personal property removed by the Trustee pursuant to the Approval Order and to incur and pay for the costs of such disposal, all without further order of the Court; and

14) Upon completion of subsections (12) through (14) listed above, the Trustee shall be deemed to have satisfied any obligation he may have under California law (or other applicable law) relating to the removal, disposal, and/or abandonment of personal property.

7.    <u>Release of Claims</u>.  In consideration of the various promises and obligations of the Parties set forth in this Settlement Agreement, the Parties agree to the following releases of claims which shall be deemed effective upon the later of the Effective Date and the Defendants having fully complied with the Consideration detailed in paragraph 4 above:

(a)  Except for the obligations set forth in, created by, arising out of or reserved by this Settlement Agreement, the Trustee and the Estates in the Bankruptcy Cases fully and forever releases, discharges, and dismisses all claims, demands, actions, causes of action and rights, in law or in equity, in the nature of an administrative proceeding or otherwise (known, unknown, contingent, accrued, inchoate or otherwise), which they have against the Defendants and all of their present and former officers directors, employees, assigns, and attorneys in each case only to the extent acting in that capacity that arise out of and/or are related in any way to the Bankruptcy Cases, or the Hwang Adversaries.

(b)  Except for the obligations set forth in, created by, arising out of or reserved by this Settlement Agreement, the Defendants fully and forever releases, discharges, and dismisses all claims, demands, actions, causes of action and rights, in law or in equity, in the nature of an administrative proceeding or otherwise (known, unknown, contingent, accrued, inchoate or otherwise), which it has against the Estates, the Trustee, and each of the Trustee's attorneys, accountants, other professionals, representatives, employees, agents, heirs, successors, predecessors, and assigns, past and present, that arise out of and/or are related in any way to the Bankruptcy Cases, or the Hwang Adversaries.

(c)  Notwithstanding any provision of this Settlement Agreement, except with respect to Defendants themselves, nothing in this agreement shall be construed as the Trustee's release of any claims or other rights against (i) the Debtors, (ii) any person or entity (other than the Defendants) against whom or which the Trustee has commenced litigation, and (iii) any person or entity (other than the Defendants) that has filed a proof of claim against the Estates or that was scheduled as a creditor of the Estates.

8.    <u>Waiver of Unknown Claims</u>.  The Trustee and the Defendants understand and recognize that they may discover or obtain information in the future pertaining to matters being released herein, which they did not know or have as of the date of this Settlement Agreement. The releases set forth in paragraph 7 above, and except as expressly reserved in paragraph 7(c), are expressly intended to cover and include a release of any claims, which arise out of, relate to, are connected with, or are incidental to any such information, which may be discovered or obtained in

the future.  As to the matters released in paragraph 7 above, except as expressly reserved in paragraph 7(c), the Trustee and the Defendants therefore expressly waive the provisions of California Civil Code section 1542 (and any federal or state statute or common law principle to similar effect), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

9.    Representation and Warranties.

(a)    Except as otherwise set forth in this Settlement Agreement, each of the Parties hereby represents and warrants that they have not previously assigned or transferred in any manner, or purported to have assigned or transferred in any manner, any of the claims described or set forth in Paragraph 7 above, titled "Release of Claims."

(b)    Except as otherwise set forth in this Settlement Agreement, each of the Parties hereby represents and warrants that the person executing this Settlement Agreement on its behalf is duly authorized to do so, and that he/she is authorized to bind the Party to the terms set forth herein.  Notwithstanding the foregoing, the Trustee's authority to enter into this Settlement Agreement is subject to Bankruptcy Court approval as set forth in paragraph 3 above.

10.    Litigation.  In the event that any action is required to enforce, defend or construe any provision of this Settlement Agreement, or if any action is brought on any claim released hereby, the prevailing party shall be entitled to recover all of his or her costs and expenses, including reasonable attorneys' fees, incurred in connection with such action(s).  Whether a Party is a prevailing party for purposes of this provision shall be determined by the Bankruptcy Court.

11.    Disclaimer of Liability.  Nothing in this Settlement Agreement shall be construed as an admission of liability and/or wrongdoing by any of the Parties, for any purpose, and this Settlement Agreement is inadmissible as evidence against any Party except to enforce the terms of the Settlement Agreement.  This Settlement Agreement is entered into to resolve the Parties' disputes and differences and avoid the expense of the litigation process and the uncertainties of trial.

12.    Governing Law, Jurisdiction, Choice of Forum.  This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of California, without regard to California's choice of law provisions.  Each Party consents to the personal jurisdiction and venue of the United States Bankruptcy Court for the Central District of California, Los Angeles Division for the trial, entry of findings, and entry of final orders and judgments with respect to any dispute arising out of this Settlement Agreement.  In the event that the Bankruptcy Court lacks or does not exercise jurisdiction over any such dispute, and to the extent not inconsistent with applicable law, each Party consents to the personal jurisdiction and venue of the United States

District Court for the Central District of California, for the trial, entry of findings, and entry of final orders and judgments with respect to any dispute arising out of this Settlement Agreement.

13.    <u>Waiver of Jury Trial</u>.

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY TO THIS SETTLEMENT AGREEMENT EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT OR THE PARTIES' RIGHTS AND OBLIGATIONS WITH RESPECT THERETO.**

14.    <u>Cooperation; Further Assurances</u>.  Each Party to this Settlement Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Settlement Agreement.

15.    <u>Attorneys' Fees</u>.

(a) Each Party shall bear its/his/her own attorneys' fees, expenses and costs incurred in connection with the subject matter of this Settlement Agreement and the preparation of this Settlement Agreement; and

(b) Nothing in this Settlement Agreement shall be interpreted or construed to waive or release any right of the Trustee and/or his professionals to seek compensation and reimbursement from the Estates.

16.    <u>Modification</u>.  This Settlement Agreement may be modified only by a contract in writing executed by the Parties to this Settlement Agreement against whom enforcement of such modification is sought.

17.    <u>Prior Understandings</u>.  This Settlement Agreement contains the entire agreement between the Parties with respect to the subject matter of this Settlement Agreement, is intended as a final expression of such Parties' agreement with respect to such terms as are included in this Settlement Agreement, is intended as a complete and exclusive statement of the terms of such agreement, and supersedes all negotiations, stipulations, understandings, agreements, representations and warranties, if any, with respect to such subject matter, which precede or accompany the execution of this Settlement Agreement.

18.    <u>Interpretation</u>.  Whenever the context so requires in this Settlement Agreement, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a joint venture, a trust, an estate, or any other entity.

19.    <u>Successors-in-Interest and Assigns</u>.  Except as otherwise set forth in this Settlement Agreement, the Parties hereto, and each of them, shall not assign or delegate to any other person this Settlement Agreement or any rights or obligations under this Settlement Agreement. Subject to any restriction on transferability contained in this Settlement Agreement, this Settlement Agreement shall be binding upon, and shall inure to the benefit of, the successors-in-interest and

assigns of the Parties hereto, and each of them.  Nothing in this Paragraph shall create any rights enforceable by any person other than the Parties hereto, except for the rights of the successor-in-interest and assigns of the Parties.

20.    Drafting Ambiguities.  Each of the Parties to this Settlement Agreement and their respective legal counsel have reviewed and approved this Settlement Agreement.  The rule of construction that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Settlement Agreement.

21.    Headings.  The headings in this Settlement Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

22.    Notices.  All notices, requests, consents and other communications required or permitted under this Settlement Agreement shall be in writing and shall be hand delivered by messenger or courier service, or mailed by registered or certified mail (postage prepaid), return receipt requested, or sent by Federal Express or similar overnight delivery service from which a receipt may be obtained, or sent by e-mail or facsimile (with confirmation that the email or fax was sent) to:

> If to Trustee:
>
> > Peter J. Mastan, Chapter 7 Trustee
> > c/o Meghann A. Triplett, Esq.
> > MARGULIES FAITH, LLP
> > 16030 Ventura Blvd., Suite 470
> > Encino, California 91436
> > Facsimile:  (818) 705-3777
> > Email:  meghann@MarguliesFaithLaw.com
>
> If to Hwang Defendants:
>
> > Christian T. Kim, Esq.
> > Dumas & Kim, APC
> > 3435 Wilshire Boulevard, Suite 990
> > Los Angeles, CA 90010
> > Facsimile:  (213) 368-5009
> > Email: ckim@dumas-law.com
>
> If to Danielle Steckler dba Paper Palate and/or Twig & Twine:
>
> > Michael H. Yi
> > Law Office of Michael H. Yi
> > 3435 Wilshire Blvd Suite 1045,
> > Los Angeles, CA 90010-1939
> > Facsimile:  (213) 377-5448
> > Email:  myi@mhylawoffices.com

23.    <u>Counterparts, Email, and Facsimile Signatures</u>.  This Settlement Agreement may be executed in whole or in counterparts together which shall make up the entire Settlement Agreement.  Email and Facsimile signatures to this Settlement Agreement shall be accepted by the Parties the same as original wet signatures.

By their signatures below, the Parties hereby agree to the terms of this Settlement Agreement, consisting of pages numbered 1 through 13, herein:

CHAPTER 7 TRUSTEE

By: _____

Peter J. Mastan
Chapter 7 Trustee for the Bankruptcy Estates of Tbetty, Inc. and
Keystone Textile, Inc.


KENNY HWANG


By: _____

Kenny Hwang


HYUN HWANG


By: _____

Hyun Hwang


MIREA HWANG


By: _____

Mirea Hwang

TRI. BLOSSOM, LLC


By: _____

Hyun Hwang
Managing Member Tri. Blossom, LLC


[Signatures Continued on Following Page]


Page 13 of 15
GLOBAL SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

23.    <u>Counterparts, Email, and Facsimile Signatures</u>. This Settlement Agreement may be executed in whole or in counterparts together which shall make up the entire Settlement Agreement. Email and Facsimile signatures to this Settlement Agreement shall be accepted by the Parties the same as original wet signatures.

By their signatures below, the Parties hereby agree to the terms of this Settlement Agreement, consisting of pages numbered 1 through 13, herein:


CHAPTER 7 TRUSTEE


By: _____
  Peter J. Mastan
  Chapter 7 Trustee for the Bankruptcy Estates of Tbetty, Inc. and
  Keystone Textile, Inc.


KENNY HWANG


By: _____
  Kenny Hwang


HYUN HWANG


By: _____
  Hyun Hwang


MIREA HWANG


By: _____
  Mirea Hwang


TRI. BLOSSOM, LLC


By: _____
  Hyun Hwang
  Managing Member Tri. Blossom, LLC

[Signatures Continued on Following Page]


Page 13 of 15
**GLOBAL SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE**

23.   <u>Counterparts, Email, and Facsimile Signatures</u>.  This Settlement Agreement may be executed in whole or in counterparts together which shall make up the entire Settlement Agreement. Email and Facsimile signatures to this Settlement Agreement shall be accepted by the Parties the same as original wet signatures.

By their signatures below, the Parties hereby agree to the terms of this Settlement Agreement, consisting of pages numbered 1 through 13, herein:

CHAPTER 7 TRUSTEE

By: _____
     Peter J. Mastan
     Chapter 7 Trustee for the Bankruptcy Estates of Tbetty, Inc. and
     Keystone Textile, Inc.

KENNY HWANG

By: _____
     Kenny Hwang

HYUN HWANG

By: _____
     Hyun Hwang

MIREA HWANG

By: _____
     Mirea Hwang

TRI. BLOSSOM, LLC

By: _____
     Hyun Hwang
     Managing Member Tri. Blossom, LLC

[Signatures Continued on Following Page]

NAM SOO HWANG

By: _____

Nam Soo Hwang

YOUNG JAE HWANG

By: _____

Young Jae Hwang

IN YOUNG HWANG

By: _____

In Young Hwang

TWIG & TWINE, INC.

By: _____

Heather Williams
President and Owner of Twig & Twine, Inc.

DANIELLE STECKLER DBA PAPER PALATE

By: _____

Danielle Steckler

[Signatures Continued on Following Page]

Page 14 of 15
GLOBAL SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

Exhibit A                                        Page 41

NAM SOO HWANG

By: _____
    Nam Soo Hwang

YOUNG JAE HWANG

By: _____
    Young Jae Hwang

IN YOUNG HWANG

By: _____
    In Young Hwang

TWIG & TWINE, INC.

By: _____
    Heather Williams
    President and Owner of Twig & Twine, Inc.

DANIELLE STECKLER DBA PAPER PALATE

By: _____
    Danielle Steckler

[Signatures Continued on Following Page]

NAM SOO HWANG

By: _____
     Nam Soo Hwang

YOUNG JAE HWANG

By: _____
      Young Jae Hwang

IN YOUNG HWANG

By: _____
     In Young Hwang

TWIG & TWINE, INC.

By: _____      **9/3/20**
     Heather Williams
     President and Owner of Twig & Twine, Inc.

DANIELLE STECKLER DBA PAPER PALATE

By: _____
     Danielle Steckler

[Signatures Continued on Following Page]

NAM SOO HWANG

By: _____
    Nam Soo Hwang

YOUNG JAE HWANG

By: _____
    Young Jae Hwang

IN YOUNG HWANG

By: _____
    In Young Hwang

TWIG & TWINE, INC.

By: _____
    Heather Williams
    President and Owner of Twig & Twine, Inc.

DANIELLE STECKLER DBA PAPER PALATE

By: _____  9/4/20
    Danielle Steckler

[Signatures Continued on Following Page]

**APPROVED AS TO FORM:**

DUMAS & KIM, APC

By: _____

     Christian T. Kim, Esq.
     Attorney for Kenny Hwang, Mirea Hwang, Hyun Hwang, In Young Hwang, Nam Soo
Hwang, and Jae Young Hwang, Tri. Blossom, LLC


THE LAW OFFICES OF MICHAEL H. YI

By: _____

     Michael H. Yi, Esq.
     Attorneys for Twig & Twine and Danielle Steckler dba Paper Plate


MARGULIES FAITH, LLP

By: _____

     Meghann A. Triplett, Esq.
     Attorneys for Peter J. Mastan, Chapter 7 Trustee for the bankruptcy estates of
     Keystone Textile, Inc. and Tbetty, Inc.

**APPROVED AS TO FORM:**

DUMAS & KIM, APC

By: _____
        Christian T. Kim, Esq.
        Attorney for Kenny Hwang, Mirea Hwang, Hyun Hwang, In Young Hwang, Nam Soo
Hwang, and Jae Young Hwang, Tri. Blossom, LLC

THE LAW OFFICES OF MICHAEL H. YI

By: _____
        Michael H. Yi, Esq.
        Attorneys for Twig & Twine and Danielle Steckler dba Paper Plate

MARGULIES FAITH, LLP

By: _____
        Meghann A. Triplett, Esq.
        Attorneys for Peter J. Mastan, Chapter 7 Trustee for the bankruptcy estates of
        Keystone Textile, Inc. and Tbetty, Inc.

**APPROVED AS TO FORM:**

DUMAS & KIM, APC

By: _____
      Christian T. Kim, Esq.
      Attorney for Kenny Hwang, Mirea Hwang, Hyun Hwang, In Young Hwang, Nam Soo
Hwang, and Jae Young Hwang, Tri. Blossom, LLC

THE LAW OFFICES OF MICHAEL H. YI

By: _____
      Michael H. Yi, Esq.
      Attorneys for Twig & Twine and Danielle Steckler dba Paper Plate

MARGULIES FAITH, LLP

By: _____
      Meghann A. Triplett, Esq.
      Attorneys for Peter J. Mastan, Chapter 7 Trustee for the bankruptcy estates of
      Keystone Textile, Inc. and Tbetty, Inc.

# Exhibit 1

1   JEREMY W. FAITH (SBN 190647)
   *Jeremy@MarguliesFaithLaw.com*
2   MEGHANN A. TRIPLETT (State Bar No. 268005)
   *Meghann@MarguliesFaithLaw.com*
3   **MARGULIES FAITH LLP**
   16030 Ventura Boulevard, Suite 470
4   Encino, CA 91436
   Telephone: (818) 705-2777
5   Facsimile: (818) 705-3777

6   Attorneys for Plaintiff, Peter J. Mastan, Chapter 7 Trustee

7

8            **UNITED STATES BANKRUPTCY COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10              **LOS ANGELES DIVISION**

| | |
|---|---|
| 11  In re | Case No.: 2:17-bk-21275-ER |
| 12  TBETTY, INC., | Chapter: 7 |
| 13                 Debtor. | Adv. No.: 2:19-ap-01404-ER |
| 14 15  PETER J. MASTAN, Chapter 7 Trustee, | **STIPULATION FOR ENTRY OF FINAL JUDGMENT** |
| 16              Plaintiff, | |
| 17  KENNY HWANG, AKA KYOUNG HWANG, AKA KYOUNG SUB HWANG, an | [No Hearing Required] |
| 18  individual, MIREA HWANG, an individual, HYUN HWANG, an individual, TRI | |
| 19  BLOSSOM, LLC, a California Limited Liability Company, K2 AMERICA, INC., a | |
| 20  California Corporation; and DOES 1-10, Inclusive, | |
| 21             Defendants. | |

22

23       Peter J. Mastan, Chapter 7 Trustee ("Plaintiff") for the bankruptcy estate (the

24  "Estate") of Tbetty, Inc. (the "Debtor"), and defendant TRI. BLOSSOM, LLC, a California

25  Limited Liability Company ("Defendant") (collectively, Plaintiff and Defendant shall be

26  referred to as the "Parties"), agree to entry of a final judgment in favor of Plaintiff on the

27  claims plead against Defendant in the "Complaint for: (1) Avoidance of Actual Fraudulent

28  Transfers [11 U.S.C. §§ 544(b) 548(a)(1)(A) and 550(a), and Cal. Civ. Code §§

1   3439.04(a), and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfers [11

2   U.S.C. §§ 544(b), 548(a)(1)(B), and 550(a), and Cal. Civ. Code §§ 3439.04(b) or

3   3439.05, and Cal. Civ. Code § 3439.07]; (3) Avoidance of Preferential Transfers [11

4   U.S.C. § 547]; (4) Conspiracy to Defraud [11 U.S.C. § 105(a)]; (5) For Recovery of Illegal

5   Dividends [Cal. Corp. Code §§ 500, 501 and 506]; (6) for Breach of Fiduciary Duty; (7)

6   Recovery from Subsequent Transferee [11 U.S.C.§§ 544, 548]; (8) Recovery of Avoided

7   Transfers [11 U.S.C.§ 550(a)]; (9) Recovery from Subsequent Transferee [11 U.S.C.§§

8   544, 548]; and (10) for Unjust Enrichment" (the "Complaint"), filed on September 15,

9   2019 in the above-captioned adversary proceeding (the "Adversary Proceeding"),

10  without trial or adjudication of any issue of fact or law and consent to entry of a final

11  judgment on the following terms:

12       1.      This Court has jurisdiction over the Parties and the subject matter of the

13  Adversary Proceeding;

14       2.      The Parties consent to entry of a final judgment and orders by the United

15  States Bankruptcy Court for the Central District of California;

16       3.      The judgment pertains to real property commonly known as 3512 Buena

17  Vista Avenue, Glendale, California 91208 (the "Property").   The Property is legally

18  described as follows:

19

20       LOT 13 IN BLOCK 12 OF SPARR HEIGHTS IN THE CITY OF
         GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS
21       PER MAP RECORDED IN BOOK 59, PAGE 34 OF SEQ., OF MAPS, IN
         THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

22       APN: 5615-005-013

23       4.      Defendant consents to the entry of a stipulated final judgment in the form

24  attached as **Exhibit 1** hereto (the "Judgment") avoiding and recovering the transfer of

25  the real property commonly known as 3512 Buena Vista Avenue, Glendale, California

26  91208 (the "Property") to Defendant on July 5, 2017 by way of Grant Deed recorded in

27  Los Angeles County on August 4, 2017 as Instrument Number 2017-883590 for the

28  benefit of the Estate pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550 and 551 for the benefit

1  of the Estate.

2      5.     Defendant shall turn over the Property to Plaintiff pursuant to 11 U.S.C. §

3  542 within fifteen (15) calendar days following the "Effective Date" of the "Global

4  Settlement Agreement and Mutual General Release" (the "Agreement") entered into

5  between the Parties as that term is defined in the Agreement.

6      6.     It is the intent of the Parties to resolve the Adversary Proceeding as

7  between the Parties pursuant to the terms of the Judgment.

8      7.     Defendant consents to the entry of the Judgment in the Adversary

9  Proceeding.

10

11                                              **Plaintiff**

12

13  DATED: September 29, 2020

14                                          Peter J. Mastan
                                        Chapter 7 Trustee of the Bankruptcy Estate of
                                        Tbetty, Inc.

15

16                                              **Defendant**

17

18  DATED: September ___. 2020
                                        TRI. BLOSSOM, LLC

19                                          By: Hyun Hwang
                                        Its: Managing Member

20  APPROVED AS TO FORM:

21                                            **DUMAS & KIM, APC**

22

23  DATED: September ___, 2020
                                        Christian T. Kim, Esq.

24                                          Attorney for Defendant Tri. Blossom, LLC

25                                          **MARGULIES FAITH, LLP**

26

27  DATED: September 29, 2020
                                        Meghann A. Triplett, Esq.

28                                          Attorney for Plaintiff Peter J. Mastan, Chapter 7
                                        Trustee for the bankruptcy estate of Tbetty, Inc.

**Plaintiff**

DATED:  August ___, 2020    _____

Peter J. Mastan
Chapter 7 Trustee of the Bankruptcy Estate of
Tbetty, Inc.

**Defendant**

DATED:  August ___. 2020    _____

Tri. Blossom, LLC
By: Hyun Hwang
Its: Managing Member

APPROVED AS TO FORM:

**DUMAS & KIM, APC**

DATED:  ~~August~~ Sept 29 2020    _____

Christian T. Kim, Esq.
Attorney for Defendant Tri. Blossom, LLC

**MARGULIES FAITH, LLP**

DATED:  August ___. 2020    _____

Meghann A. Triplett, Esq.
Attorney for Plaintiff Peter J. Mastan, Chapter 7
Trustee for the bankruptcy estate of Tbetty, Inc.

# Exhibit 1

1

2

3

4

5

6

7

8                           **UNITED STATES BANKRUPTCY COURT**

9                           **CENTRAL DISTRICT OF CALIFORNIA**

10                              **LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No.:  2:17-bk-21275-ER |
| TBETTY, INC., | Chapter: 7 |
| Debtor. | Adv. No.: 2:19-ap-01404-ER |
| PETER J. MASTAN, Chapter 7 Trustee, | **JUDGMENT PER STIPULATION** |
| Plaintiff, | |
| KENNY HWANG, AKA KYOUNG HWANG, AKA KYOUNG SUB HWANG, an individual, MIREA HWANG, an individual, HYUN HWANG, an individual, TRI BLOSSOM, LLC, a California Limited Liability Company, K2 AMERICA, INC., a California Corporation; and DOES 1-10, Inclusive, | [No Hearing Required] |

22          The Court, having considered the "Stipulated Final Judgment" (the "Stipulated

23   Judgment")[1] entered into by plaintiff Peter J. Mastan, Chapter 7 Trustee ("Plaintiff") for

24   the bankruptcy estate ("Estate") of Tbetty, Inc. (the "Debtor"), on the one hand, and

25   defendant TRI. BLOSSOM, LLC ("Defendant") (collectively, Plaintiff and Defendant are

26   referred to as the "Parties"), the Court having considered all pleadings and documents

27   filed in the case, and good cause appearing thereto,

28   / / /

_____

[1] Defined terms in the Stipulated Judgment shall have the same meaning herein.

1

2       **IT IS HEREBY ORDERED** as follows:

3       1.       The Stipulated Judgment is approved;

4       2.       This judgment pertains to real property commonly known as 3512 Buena

5    Vista Avenue, Glendale, California 91208 (the "Property").   The Property is legally

6    described as follows:

7

8            LOT 13 IN BLOCK 12 OF SPARR HEIGHTS IN THE CITY OF GLENDALE,
         COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP
         RECORDED IN BOOK 59, PAGE 34 OF SEQ., OF MAPS, IN THE OFFICE

9            OF THE COUNTY RECORDER OF SAID COUNTY.

10           APN: 5615-005-013

11      3.       The transfer of the Property on July 5, 2017 to Defendant by way of Grant

12   Deed recorded in Los Angeles County on August 4, 2017 as Instrument Number 17-

13   883590 is avoided pursuant to 11 U.S.C. § 548(a)(1)(B), and ordered recovered

14   pursuant to 11 U.S.C. § 550 and preserved pursuant to 11 U.S.C. § 551 for the benefit of

15   the Estate;

16      4.       Defendant shall turn over the Property to Plaintiff pursuant to 11 U.S.C. §

17   542 within fifteen (15) calendar days following the "Effective Date" of the "Global

18   Settlement Agreement and Mutual General Release" (the "Agreement") entered into

19   between the Parties as that term is defined in the Agreement.

20      5.       This Court retains jurisdiction for purposes of enforcing this Stipulated Final

21   Judgment.

22      **IT IS SO ORDERED.**

23                                            ###

24

25

26

27

28

# Exhibit 2

**RECORDING REQUESTED BY:**


**AND WHEN RECORDED MAIL TO:**
Peter J. Mastan, Chapter 7 Trustee
c/o Meghann A. Triplett, Esq.
Margulies Faith, LLP
16030 Ventura Blvd., Suite 470
Encino, CA 91436

---

THIS SPACE FOR RECORDER'S USE ONLY:

## QUITCLAIM DEED

---

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $ 0.00 CITY TRANSFER TAX $ 0.00**

This is a court-ordered conveyance or decree that is not pursuant to sale, R&T 11911

[  ] computed on full value of property conveyed, or
[  ] computed on full value less value of liens or encumbrances remaining at time of sale.
[  ] Unincorporated area    [X]  City of Glendale  **AND**


FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**TRI. BLOSSOM, LLC, a California Limited Liability Company**

do(es) hereby remise, release and forever quitclaim to:

**Peter J. Mastan, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Tbetty, Inc.,
Bankruptcy Case No. 2:17-bk-21275-ER**

the real property in the City of Glendale, County of Los Angeles, State of California, described as:

LOT 13 IN BLOCK 12 OF SPARR HEIGHTS IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 59, PAGE 34 OF SEQ., OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN # 5615-005-013
Also Known as: 3512 Buena Vista Avenue, Glendale, CA 91208

**Date:** _9/25/2020_

---

Hyun Hwang, Member
for TRI. BLOSSOM, LLC

---

Mirea Hwang, Member
for TRI. BLOSSOM, LLC

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_

On _9/25/2020_ before me, _Ji Yeon Lee_, a Notary Public, personally appeared _Mirea Hwang_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)
Signature

JI YEON LEE
Notary Public – California
Los Angeles County
Commission # 2221503
My Comm. Expires Dec 9, 2021

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_

On _9/25/2020_ before me, _Ji Yeon Lee_ , a Notary Public, personally appeared _Hyun Hwang_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____    (Seal)
Signature

JI YEON LEE
Notary Public – California
Los Angeles County
Commission # 2221583
My Comm. Expires Dec 9, 2021

# Exhibit B

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Settlement Agreement") is dated August ___, 2020 and is entered into by and between Pacific Sourcing Group, Inc. ("Pacific"), on the one hand, and Peter J. Mastan, Chapter 7 Trustee (the "Trustee") for the bankruptcy estates of Tbetty, Inc. and Keystone Textile, Inc. (together, the "Estates") on the other hand.  Pacific and the Trustee may hereafter be referred to collectively as the "Parties," and each individually, a "Party."

## RECITALS

This Settlement Agreement is made with reference to the following recital of essential facts based on the information and belief of the Parties:

A.  In March 2017, Mirea Hwang ("Mirea") and Hyun Hwang ("Hyun") purchased the real property commonly known as 3512 Buena Vista Ave., Glendale, CA 91208-1204, Assessor's Parcel Number: 5615-005-013 (the "Glendale Property") for approximately $1,370,000, with a $770,000 cash down payment (the "Down Payment").

B.  On March 8, 2017, a Grant Deed was recorded vesting title in the Glendale Property with "Hyun Hwang, a single woman, and Mirea Hwang, a married woman as her some and separate property as joint tenants" (the "Hwang Grant Deed").

C.  Concurrently with the Hwang Grant Deed, a Quitclaim Deed was recorded as Instrument No. 20170268286 forever releasing any interest of Mirea's spouse Kenny Hwang ("Mr. Hwang") in the Glendale Property to Mirea as her sole and separate property (the "Hwang Quitclaim").

D.  A Deed of Trust was also recorded on March 8, 2017 as Instrument No. 20170268288 to secure the repayment of a $636,000 loan against the Glendale Property (the "Loan").  Mirea and Hyun were the borrowers under the Loan.

E.  On or about May 9, 2017, Milberg Factors of California, Inc. ("Milberg") initiated a lawsuit against Mr. Hwang and his entity Keystone Textile, Inc. ("Keystone") in the Superior Court of the State of California, County of Los Angeles action entitled Milberg Factors of California, Inc. v. Kenny Hwang, et al., Case No. BC660780 for breach of contract and monetary damages related to goods sold to Keystone (the "Action").

F.  On May 19, 2017, a stipulated judgment was entered in the Action favor of Milberg and against Mr. Hwang and Keystone in the amount of $370,549.37 (the "Judgment").

G.  On or about July 27, 2017, Milberg caused an Abstract of Judgment to be recorded in Los Angeles County as Instrument No. 20170846975 against Kenny Hwang and Keystone on account of the Judgment (the "Hwang Abstract").  On or about April 3, 2018, Milberg re-recorded the Hwang Abstract as Instrument No. 201780319264.

H.  On August 4, 2017, Mirea and Hyun recorded a Grant Deed transferring title of the Glendale Property to Tri. Blossom LLC, a California Limited Liability Company ("Tri Blossom") as Instrument No. 20170883590.  Mirea and Hyun were the managing members of Tri Blossom.

I.    On September 11, 2017, Tri Blossom, through Mirea and Hyun caused a Deed of Trust and Assignment of Rents to be recorded against the Glendale Property securing a $300,000 note in favor of General Business Credit ("GBC") which was recorded on as Instrument No. 17-1025249 of Official Records (the "GBC Note").

J.    Also on September 11, 2017, Tri Blossom, through Mirea and Hyun caused a Short Form Deed of Trust and Assignment of Rents to be recorded against the Glendale Property securing a $300,000 note in favor of K2 America, Inc. a California Corporation ("K2 America") which was recorded as Instrument No. 17-1030312 of Official Records (the "K2 Note").

K.    On September 14, 2017 (the "Petition Date"), Tbetty, Inc. (the "Tbetty Debtor") filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code before the United States Bankruptcy Court for the Central District of California, initiating the Chapter 7 case identified as *In re Tbetty, Inc.*, Bankruptcy Case Number 2:17-bk-21275-ER (the "Tbetty Bankruptcy Case"). The Trustee was subsequently appointed to administer the Tbetty Estate.

L.    That same day, Mr. Hwang's related entity Keystone (the "Keystone Debtor") filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code before the United States Bankruptcy Court for the Central District of California, initiating the Chapter 7 case identified as *In re Keystone Textile, Inc.*, Bankruptcy Case Number 2:17-bk-21270-ER (the "Keystone Bankruptcy Case"). The Trustee was subsequently appointed to administer the Keystone Estate. The Keystone Debtor and the Tbetty Debtor are collectively referred to as the "Debtors".

M.    At all relevant times, Mr. Hwang was the person-in-charge of the Debtors, and had access to, and exercised control over the Debtors and the Debtors' bank accounts.

N.    On or about January 17, 2018, Milberg filed a proof of claim in the Keystone Bankruptcy Case which was designated as Claim No. 2-1 on the Court's Claims Register (the "Milberg Claim"). The Milberg Claim asserts a secured claim in the amount of $286,960.34 claim on account of the Judgment.

O.    On or about February 6, 2019, as part of its collection efforts in the Action, Milberg caused a Notice of Levy under Writ of Execution (Money Judgment) to be recorded against the Glendale Property as Instrument No. 2019-0112976 of the Official Records ("Pacific Writ") seeking to collect on the Judgment against Mr. Hwang.

P.    Pacific subsequently acquired Milberg's claims in the Action on or about May 31, 2019, including but not limited to the Judgment, the Hwang Abstract, and the Milberg Claim.

Q.    June 10, 2019, Pacific caused an additional Abstract of Judgment to be recorded in Los Angeles County as Instrument No. 20190544191 against Mr. Hwang and Keystone on account of the Judgment (referred to collectively with the Hwang Abstract as the "Alleged Judgment Lien").

R.    On September 15, 2019, the Trustee commenced an adversary proceeding in the Tbetty Bankruptcy Case against Mr. Hwang, Mirea, Hyun, Tri Blossom, and K2 America, and other individual defendants by filing a "Complaint for: (1) Avoidance of Actual Fraudulent Transfers [11 U.S.C. 544(b) 548(a)(1)(A) and 550(a), and Cal. Civ. Code §§ 3439.04(a) and 3439.07]; (2) Avoidance of Constructive Fraudulent Transfers [11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550(a), and Cal. Civ. Code §§ 3439.04(b) or 3439.05 and Cal. Civ. Code § 3439.07]; (3) Avoidance of

Preferential Transfers [11 U.S.C. § 547]; (4) Recovery from Subsequent Transferee [11 U.S.C. §§ 544, 548]; (5) Recovery of Avoided Transfers [11 U.S.C.§ 550(a)(2)]; (6) Conspiracy to Defraud [11 U.S.C. § 105(a)]; (7) For Recovery of Illegal Dividends [Cal. Corp. Code §§ 500, 501 and 506]; and (8) For Unjust Enrichment" (the "Complaint"), thereby initiating the adversary case styled *Mastan v. Hwang., et al.*, case no. 2:19-ap-01404-ER (the "Hwang Adversary").

S.    In the context of the Hwang Adversary, the Trustee alleged, among other claims that the Down Payment was fraudulently transferred from the Tbetty Debtor, and as such, the Tbetty Estate holds either legal or equitable title to the Glendale Property and the Trustee is entitled to the imposition of a Constructive Trust over the Glendale Property; the subsequent transfer of the Glendale Property to Tri Blossom for no consideration is avoidable as a fraudulent transfer (the "Tri Blossom Transfer"), the K2 Note was perfected in bad faith as part of a scheme to defraud the Tbetty Debtor's creditors and is subject to avoidance. The Down Payment, the Tri Blossom Transfer, and the K2 Note (collectively, the "Transfers") are avoidable as either actual or constructive fraudulent transfers pursuant to 11 U.S.C. §§ 544(b), 548, 550, and California Civil Code §§ 3439.04, 3439.05 and 3439.07, and subject to recovery by the Trustee (the "Avoidance Claim").

T.    Subject to Bankruptcy Court Approval, the Trustee has entered into an agreement to resolve the Avoidance Claim in the Hwang Adversary, as well as the Trustee's claims against Mr. Hwang, Mirea, Hyun, and Tri Blossom (referred to herein as the "Hwang Settlement"). The Hwang Settlement provides for Tri Blossom to execute a Quitclaim Deed transferring the Glendale Property to the Trustee in the Tbetty Bankruptcy Case, and for the Trustee to market and sell the Glendale Property pursuant to 11 U.S.C. § 363 for the benefit of the Estates. The Hwang Settlement does not include the Trustee's claims against K2 America which remain outstanding.

U.    The Trustee disputes the validity of Pacific's assertion of a security interest in the Glendale Property as Mr. Hwang never held any interest or record title to the Glendale Property, the Down Payment used to purchase the Glendale Property was property of the Tbetty Debtor subject to avoidance and recovery by the Trustee as either a constructive or actual fraudulent transfer, the Tbetty Estate holds either legal or equitable title to the Glendale Property and the Trustee is entitled to the imposition of a Constructive Trust over the Glendale Property. As such, the Trustee maintains that Pacific does not have a security interest in the Glendale Property on account of the Judgment, the Alleged Judgment Lien did not attach to the Glendale Property, and the Pacific Writ is unenforceable and should be quashed.

V.    Pacific has denied the claims of the Trustee and contends that the Pacific Writ is an enforceable lien against the Glendale Property on account of the Judgment because the Hwang Quitclaim is avoidable as either a constructive or actual fraudulent transfer, Mr. Hwang retained an equitable interest in the Glendale Property after he transferred his interest in the Glendale Property, and/or Mr. Hwang is the alter ego of Tri Blossom.

W.    The Parties desire to settle Pacific's asserted claims against the Glendale Property in order to avoid the burden, expense, and uncertainty of continuing litigation.

(Remainder of Page Intentionally Blank)

X.  In consideration of the mutual promises set forth herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree to a resolution, as set forth herein, of Pacific's asserted security interest in the Glendale Property and release of the Pacific Writ, the Alleged Judgment Lien, and any other claim of security against the Glendale Property.

## TERMS

1.  <u>Incorporation of Recitals</u>.  The foregoing recitals are hereby repeated and incorporated herein as though set forth in full.

2.  <u>Conditions Precedent to Effectiveness</u>.  Except as provided in paragraphs 2-6, and 8-21 below, this Settlement Agreement shall be void and of no force and effect unless and until all of the following have occurred: (a) all Parties have executed this Settlement Agreement; and (b) the Bankruptcy Court has approved this Settlement Agreement in the Bankruptcy Case as described in Paragraph 6 of this Settlement Agreement.

3.  <u>Effective Date</u>:  The effective date of this Settlement Agreement (the "Effective Date") shall be the date the Bankruptcy Court enters a "Final Order" approving this Settlement Agreement (the "Approval Order").  The Parties consent to entry of such an order by the Bankruptcy Court.  The Approval Order does not become a Final Order unless and until (1) the time to file a timely appeal of said order under Fed.R.Bankr.P. 8002 has passed and no such timely appeal has been filed; or (2) if a timely appeal is filed, then after all timely filed appeals are dismissed with prejudice (and/or are dismissed as moot) or the Approval Order is affirmed on appeal and is not subject to further timely appellate review, whether by appeal, petition for rehearing, or petition for certiorari.  If, for any reason, the Effective Date does not occur, including, without limitation, because the Bankruptcy Court denies the Approval Motion, the Parties will return, without prejudice, to the status quo ante as if no settlement had been negotiated or entered into.

4.  <u>Settlement Payment</u>:

   a.  The Trustee on behalf of the Estates shall pay to Pacific the total sum of twenty-five thousand dollars ($25,000.00) (the "Settlement Payment") from the net sale proceeds of the Glendale Property in exchange for the satisfaction and release of Pacific's asserted secured claim against the Glendale Property, including but not limited to the Alleged Judgment Lien and the Pacific Writ.  The Settlement Payment shall be paid to Pacific through escrow at the close of the sale of the Glendale Property;

   b.  Pacific consents to the Trustee's sale of the Glendale Property free and clear of its asserted security interest pursuant to 11 U.S.C. § 363(f)(2).  To the extent the $25,000.00 in net proceeds is not available at the close of the sale of the Glendale Property, Pacific shall have an administrative claim against the Keystone Estate for any unpaid portion of the Settlement Payment;

(Remainder of Page Intentionally Blank)

Page **4** of **9**
**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

c. Within fourteen (14) business days following the Effective Date, Pacific shall provide the Trustee with an original executed written Notice of Release of the Pacific Writ (the "Release") in the form attached to this Settlement Agreement as Exhibit A. The Release shall be delivered to:

Peter J. Mastan, Chapter 7 Trustee<br>
c/o Meghann A. Triplett, Esq.<br>
Margulies Faith LLP<br>
16030 Ventura Blvd., Suite 470<br>
Encino, California 91436

The Trustee shall hold the Release until the close of the sale of the Glendale Property and the Release shall only recorded in connection with the Trustee's sale of the Glendale Property. If, for any reason, the sale of the Glendale Property does not occur, including, without limitation, because the Bankruptcy Court denies the Trustee's motion to sell the Glendale Property, or the Glendale Property is abandoned by the Trustee, the Trustee will return the Release or direct escrow to return the Release, and the Parties will return, without prejudice, to the status quo ante as if no settlement had been negotiated or entered into; and

d. Notwithstanding the provisions of this Settlement Agreement, the Trustee shall retain the right to abandon the Glendale Property if the Trustee determines that the Glendale Property is burdensome to the Estates or is of inconsequential value to the Estates.

5. Proof of Claim: Pacific shall have the right to amend the Milberg Claim to assert a general unsecured claim on account of the Judgment, as reduced by the Settlement Payment in the amount of $261,960.34 (the "Amended Pacific Claim"). The Trustee shall not object to the Amended Pacific Claim. For avoidance of doubt, and except as provided herein with respect to Pacific's release of the Glendale Property, Pacific's filing of the Amended Pacific Claim shall have no impact on the validity or enforceability of the abstract of judgment or UCC-1 filings related to the Judgment under nonbankruptcy law, and Pacific explicitly retains all nonbankruptcy rights with respect to perfection of the Judgment against Hwang and Keystone.

6. Approval by the Bankruptcy Court: Following the execution of this Settlement Agreement by all Parties (without any modification or interlineation), the Trustee shall file a motion, under Fed.R.Bankr.P. 9019, for an order approving the Settlement Agreement.

Notwithstanding any other provision of this Settlement Agreement, if the Bankruptcy Court denies the Approval Motion, the Trustee shall have no obligation to appeal such denial, and if any person or entity appeals or seeks appellate review of the Approval Order or an order denying the Approval Motion, the Trustee shall have no obligation to oppose or otherwise respond to such an appeal or request for appellate review. In the event the Approval Motion is denied, the Trustee shall return the Release to Pacific within fifteen (15) business days of entry of an Order denying the Approval Motion, and Pacific shall be deemed to have retained any and all of its claims and defenses arising in connection with or relating to the Debtor, the Bankruptcy Case, the Adversary, the Avoidance Claim, and the Transfers.

Page **5** of **9**<br>
**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

7.      <u>Release of Claims</u>.  In consideration of the various promises and obligations of the Parties set forth in this Settlement Agreement, the Parties agree to the following releases of claims:

(a)  Except for the obligations set forth in, created by, arising out of or reserved by this Settlement Agreement, the Trustee and the Tbetty Estate in the Tbetty Bankruptcy Case and the Keystone Estate in the Keystone Bankruptcy Case fully and forever releases, discharges, and dismisses all claims, demands, actions, causes of action and rights, in law or in equity, in the nature of an administrative proceeding or otherwise (known, unknown, contingent, accrued, inchoate or otherwise), which they have or may have against Pacific, and all of its present and former officers directors, employees, and assigns, past and present in each case only to the extent acting in that capacity that arise out of and/or are related in any way to the Tbetty Bankruptcy Case or the Keystone Bankruptcy Case.

(b)  Except for the obligations set forth in, created by, arising out of or reserved by this Settlement Agreement, Pacific fully and forever releases, discharges, and dismisses all claims, demands, actions, causes of action and rights, in law or in equity, in the nature of an administrative proceeding or otherwise (known, unknown, contingent, accrued, inchoate or otherwise), which it has or may have against the Estates, the Trustee, and each of the Trustee's attorneys, accountants, other professionals, representatives, employees, agents, heirs, successors, predecessors, and assigns, past and present, that arise out of and/or are related in any way to the Glendale Property, the Tbetty Bankruptcy Case or the Keystone Bankruptcy Case, with the exception of the Amended Pacific Claim as set forth in paragraph 5 above.

(c)  Notwithstanding any provision of this Settlement Agreement, except with respect to Pacific itself, nothing in this Settlement Agreement shall be construed as the Trustee's release of any claims or other rights against (i) the Debtors; (ii) Kenny Hwang, Mirea Hwang, Hyun Hwang, Tri Blossom, K2 America, or any person or entity affiliated with Kenny Hwang; (iii) any person or entity (other than Pacific) against whom or which the Trustee has commenced litigation; and (iv) the Glendale Property; and (v) any person or entity (other than Pacific with respect to the Amended Pacific Claim) that has filed a proof of claim against the Estates or that was scheduled as a creditor of the Estates.  For purposes of clarity and the avoidance of doubt, nothing in this Settlement Agreement shall preclude the Trustee from attempting to collect and/or collecting debt(s) owed to the Estates by any individual and/or entity that received fraudulent transfers from the Debtors.

8.      <u>Representation and Warranties</u>.

(a)  Except as otherwise set forth in this Settlement Agreement, each of the Parties hereby represents and warrants that they have not previously assigned or transferred in any manner, or purported to have assigned or transferred in any

manner, any of the claims described or set forth in Paragraph 7 above, titled "Release of Claims."

(b) Except as otherwise set forth in this Settlement Agreement, each of the Parties hereby represents and warrants that the person executing this Settlement Agreement on its behalf is duly authorized to do so, and that he/she is authorized to bind the Party to the terms set forth herein.

9.    Disclaimer of Liability.  Nothing in this Settlement Agreement shall be construed as an admission of liability and/or wrongdoing by any of the Parties, for any purpose.  This Settlement Agreement is entered into to resolve the Parties' disputes and differences and avoid the expense of the litigation process and the uncertainties of trial.

10.    Governing Law, Jurisdiction, Choice of Forum.  This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of California, without regard to California's choice of law provisions.  Each Party consents to the personal jurisdiction and venue of the United States Bankruptcy Court for the Central District of California, Los Angeles Division for the trial, entry of findings, and entry of final orders and judgments with respect to any dispute arising out of this Settlement Agreement.  In the event that the Bankruptcy Court lacks or does not exercise jurisdiction over any such dispute, and to the extent not inconsistent with applicable law, each Party consents to the personal jurisdiction and venue of the United States District Court for the Central District of California, for the trial, entry of findings, and entry of final orders and judgments with respect to any dispute arising out of this Settlement Agreement.

11.    Waiver of Jury Trial.

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY TO THIS SETTLEMENT AGREEMENT EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT OR THE PARTIES' RIGHTS AND OBLIGATIONS WITH RESPECT THERETO.**

12.    Cooperation; Further Assurances.  Each Party to this Settlement Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Settlement Agreement.

13.    Attorneys' Fees.

(a) Each Party shall bear its/his/her own attorneys' fees, expenses and costs incurred in connection with the subject matter of this Settlement Agreement and the preparation of this Settlement Agreement; and

(b) Nothing in this Settlement Agreement shall be interpreted or construed to waive or release any right of the Trustee and/or his professionals to seek compensation and reimbursement from the Estate.

14.    Modification.  This Settlement Agreement may be modified only by a contract in writing executed by the Parties to this Settlement Agreement against whom enforcement of such modification is sought.

15.     Prior Understandings.  This Settlement Agreement contains the entire agreement between the Parties with respect to the subject matter of this Settlement Agreement, is intended as a final expression of such Parties' agreement with respect to such terms as are included in this Settlement Agreement, is intended as a complete and exclusive statement of the terms of such agreement, and supersedes all negotiations, stipulations, understandings, agreements, representations and warranties, if any, with respect to such subject matter, which precede or accompany the execution of this Settlement Agreement.

16.     Interpretation.  Whenever the context so requires in this Settlement Agreement, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a joint venture, a trust, an estate, or any other entity.

17.     Successors-in-Interest and Assigns.  Except as otherwise set forth in this Settlement Agreement, the Parties hereto, and each of them, shall not assign or delegate to any other person this Settlement Agreement or any rights or obligations under this Settlement Agreement.  Subject to any restriction on transferability contained in this Settlement Agreement, this Settlement Agreement shall be binding upon, and shall inure to the benefit of, the successors-in-interest and assigns of the Parties hereto, and each of them.  Nothing in this Paragraph shall create any rights enforceable by any person other than the Parties hereto, except for the rights of the successor-in-interest and assigns of the Parties

18.     Drafting Ambiguities.  Each of the Parties to this Settlement Agreement and their respective legal counsel have reviewed and approved this Settlement Agreement.  The rule of construction that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Settlement Agreement.

19.     Headings.  The headings in this Settlement Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

20.     Notices.  All notices, requests, consents and other communications required or permitted under this Settlement Agreement shall be in writing and shall be hand delivered by messenger or courier service, or mailed by registered or certified mail (postage prepaid), return receipt requested, or sent by Federal Express or similar overnight delivery service from which a receipt may be obtained, or sent by e-mail or facsimile (with confirmation that the email or fax was sent) to:

If to Trustee:

Peter J. Mastan, Chapter 7 Trustee
c/o Meghann Triplett, Esq.
MARGULIES FAITH, LLP
16030 Ventura Blvd., Suite 470
Encino, California 91436
Email:  meghann@MarguliesFaithLaw.com

If to Pacific:

> Pacific Sourcing Group, Inc.
> c/o Jessica Bagdanov, Esq.
> BRUTZKUS GUBNER
> 21650 Oxnard St., Suite 500
> Woodland Hills, CA 91367
> Email: jbagdanov@bg.law

21.    Counterparts, Email, and Facsimile Signatures. This Settlement Agreement may be executed in whole or in counterparts together which shall make up the entire Settlement Agreement. Email and Facsimile signatures to this Settlement Agreement shall be accepted by the Parties the same as original wet signatures.

By their signatures below, the Parties hereby agree to the terms of this Settlement Agreement, consisting of pages numbered 1 through 9, herein:

CHAPTER 7 TRUSTEE

By: _____
   Peter J. Mastan
   Chapter 7 Trustee for the Bankruptcy Estates of Tbetty, Inc and Keystone Textile, Inc.

PACIFIC SOURCING GROUP, INC.

By: _____
   Houman Nikbakht
   President/CEO Pacific Sourcing Group, Inc.

APPROVED AS TO FORM:

BRUTZKUS GUBNER

By: _____
   Jessica Bagdanov, Esq.
   Attorneys for Pacific Sourcing Group, Inc.

MARGULIES FAITH, LLP

By: _____
   Meghann A. Triplett, Esq.
   Attorneys for Peter J. Mastan, Chapter 7 Trustee for the bankruptcy estates of Tbetty, Inc. and Keystone Textile, Inc.

If to Pacific:

> Pacific Sourcing Group, Inc.
> c/o Jessica Bagdanov, Esq.
> BRUTZKUS GUBNER
> 21650 Oxnard St., Suite 500
> Woodland Hills, CA 91367
> Email: jbagdanov@bg.law

    21.    <u>Counterparts, Email, and Facsimile Signatures</u>. This Settlement Agreement may be executed in whole or in counterparts together which shall make up the entire Settlement Agreement. Email and Facsimile signatures to this Settlement Agreement shall be accepted by the Parties the same as original wet signatures.

    By their signatures below, the Parties hereby agree to the terms of this Settlement Agreement, consisting of pages numbered 1 through 9, herein:

CHAPTER 7 TRUSTEE


By: _____
    Peter J. Mastan
    Chapter 7 Trustee for the Bankruptcy Estates of Tbetty, Inc and Keystone Textile, Inc.

PACIFIC SOURCING GROUP, INC.


By: _____
    Houman Nikbakht
    President/CEO Pacific Sourcing Group, Inc.

APPROVED AS TO FORM:

BRUTZKUS GUBNER


By: _____
    Jessica Bagdanov, Esq.
    Attorneys for Pacific Sourcing Group, Inc.


MARGULIES FAITH, LLP


By: _____
    Meghann A. Triplett, Esq.
    Attorneys for Peter J. Mastan, Chapter 7 Trustee for the bankruptcy estates of
    Tbetty, Inc. and Keystone Textile, Inc.

# Exhibit A

**RECORDING REQUESTED BY:**

First American Title Company

**When Recorded Mail to:**

A&A Escrow Services, Inc.

415 N. Crescent Drive, Suite 320

Beverly Hills, CA 90210

**Escrow No.**
**Title Order No.** TOR-5986716

APN:

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**RELEASE OF** NOTICE OF LEVY

(Abstract, Mortgage, Mechanic's Lien, etc.)

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, the undersigned as

Pacific Sourcing Group, Inc. successor in interest to Milberg Factors    hereby releases from the Official

(Plaintiff, Mortgagee, Claimant, etc.)
Records of the Recorder of the County of Los Angeles    , State of California   ,
the lien filed against 3512 Buena Vista Avenue, Glendale, California 91208
evidenced by the hereinafter referred to document dated    and recorded on
February 6, 2019    as Instrument No. 19-112976   in Book    , page    .

[  ]   Abstract of the Judgment issued out of the    Court
        of the State of    under Case No.    .
        with defendant as    .
[  ]   Mortgage executed by    ,
        as Mortgagor, and    ,
        as Mortgagee.
[  ]   Mechanic's Lien executed by
                                                                        , as Claimant

        Against

[✓]    Release of Notice of Levy under Writ of Execution (Money Judgment) in Case No. BC60780

DATED: _____        _____

STATE OF CALIFORNIA
COUNTY OF Los Angeles_____
ON _____ before me,
_____ personally appeared
_____
_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature (s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal

Signature _____

RELEASE

Exhibit A
Exhibit B                                                                Page 71

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled (*specify*): **OMNIBUS MOTION FOR ORDER AUTHORIZING THE TRUSTEE TO SETTLE CERTAIN ADVERSARY ACTIONS PURSUANT TO F.R.B.P. 9019; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHAPTER 7 TRUSTEE, PETER J. MASTAN IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 30, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **November 30, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

JUDGE: Service on Judge not required per Court Manual, Appendix F
DEBTOR: Tbetty, Inc., 5300 Beach Blvd., Ste. 110-605, Buena Park, CA 90621
Office of the U.S. Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 30, 2020 | Helen Cardoza | /s/ Helen Cardoza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

## ADDITIONAL SERVICE INFORMATION (if needed):

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

**ATTORNEY FOR DEBTOR: Ann Chang**    achang@dumas-law.com
**ATTORNEY FOR TRUSTEE: Jeremy Faith**    Jeremy@MarguliesFaithlaw.com,
Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
**ATTORNEY FOR DEBOR: Christian T Kim**    ckim@dumas-law.com, ckim@ecf.inforuptcy.com
**FORMER ATTORNEY FOR TRUSTEE: Noreen A Madoyan**    Noreen@MarguliesFaithLaw.com,
Helen@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
**TRUSTEE: Peter J Mastan (TR)**    pmastan@iq7technology.com;travis.terry@dinsmore.com;
ecf.alert+Mastan@titlexi.com
**ATTORNEY FOR INTERESTED PARTY: Andrew Edward Smyth**    office@smythlo.com
**ATTORNEY FOR INTERESTED PARTY: Stephen S Smyth**    office@smythlo.com;r58723@notify.bestcase.com
**ATTORNEY FOR INTERESTED PARTY: Nico N Tabibi**    nico@tabibilaw.com
**ATTORNEY FOR TRUSTEE: Meghann A Triplett**    Meghann@MarguliesFaithlaw.com,
Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
**United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
**ATTORNEY FOR CREDITOR: Michael H Yi**    myi@yimadrosenlaw.com, r53621@notify.bestcase.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                **F 9013-3.1.PROOF.SERVICE**