1  JEREMY W. FAITH (SBN 190647)
   *Email: Jeremy@MarguliesFaithLaw.com*
2  MEGHANN A. TRIPLETT (SBN 268005)
   *Email: Meghann@MarguliesFaithLaw.com*
3  **MARGULIES FAITH, LLP**
   16030 Ventura Blvd., Suite 470
4  Encino, California 91436
   Telephone: (818) 705-2777
5  Facsimile:  (818) 705-3777

6  Attorneys for Peter J. Mastan, Chapter 7 Trustee

7

8              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
9                 **LOS ANGELES DIVISION**

10

| | |
|---|---|
| In re | Case No.: 2:17-bk-21275-ER |
| TBETTY, INC., | Chapter: 7 |
| Debtor. | **APPLICATION TO EMPLOY REAL ESTATE BROKER AND TO ENTER INTO EXCLUSIVE LISTING AGREEMENT; DECLARATIONS OF DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSONS UNDER F.R.B.P. 2014 AND L.B.R. 2014-1(b)** |
| | [11 U.S.C. §§ 327, 328] |
| | [No Hearing Required L.B.R. 9013-1(o)] |

18  **TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY**

19  **JUDGE:**

20       Peter J. Mastan, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate

21  (the "Estate") of debtor Tbetty, Inc. (the "Debtor"), hereby submits his application (the

22  "Application") for authority to employ Coldwell Banker Residential Brokerage (the

23  "Broker") as the Trustee's real estate broker to sell the real property located at 3512

24  Buena Vista Ave., Glendale, California 91208, Assessor's Parcel Number 5615-005-013

25  (the "Property") effective December 2, 2020, in accordance with the terms of that certain

26  Residential Listing Agreement for the Property (including all addenda, the "Listing

27  Agreement") attached hereto as **Exhibit A**, and other terms and conditions set forth in

28  this Application.

1   In support of the Application, the Trustee respectfully represents as follows:

2   **A.**      **Background Facts**

3   On September 14, 2017 (the "Petition Date"), the Debtor filed a voluntary

4   bankruptcy petition for relief under Chapter 7 of the Bankruptcy Code, commencing the

5   above-captioned bankruptcy case (the "Case").  The Trustee is the duly appointed and

6   acting chapter 7 trustee of the Debtor's Estate under 11 U.S.C. § 702.

7   Among the assets of the Estate is the Property.  The Property was recovered by

8   the Trustee for the benefit of the Estate pursuant to the "Global Settlement Agreement

9   and Mutual General Release" (the "Settlement Agreement") and Stipulated Judgment in

10  a related adversary proceeding pending before this Court entitled *Mastan v. Tri.*

11  *Blossom, LLC, et. al.*, Adv. No. 2:19-ap-01404-ER (the "Tri Blossom Adversary").

12  The Settlement Agreement was approved by the Court pursuant to Fed. R. Bankr.

13  P. 9019 on December 18, 2020.  As a result of the Settlement Agreement, the Trustee

14  has determined that after estimated liens, and cost of sale expenses are considered,

15  equity exists in the Property for the benefit of the Estate and its creditors.  The

16  Settlement Agreement further provides for the net sales proceeds from the Property to

17  be split 50/50 between the Tbetty Estate and the related chapter 7 bankruptcy estate of

18  Keystone Textile, Inc. (Bankruptcy Case No. 2:17-bk-21270-ER).

19  **B.**      **The Proposed Retention of the Broker**

20  To realize the maximum value of the Property, the Trustee requires the assistance

21  of an experienced real estate broker to list, market, and sell the Property, to provide

22  assistance concerning the structure of any potential sale of the Property, and to assist

23  the Trustee in the negotiation and documentation of any transaction regarding the sale of

24  the Property.  In that regard, the Trustee seeks Court authority to employ the Broker

25  through its co-agents William Friedman ("Mr. Friedman"), Jane Schore ("Ms. Schore"),

26  and Steve Flores ("Mr. Flores," together with Mr. Friedman and Ms. Shore, the "Agents")

27  with Coldwell Banker Residential Brokerage pursuant to 11 U.S.C. § 327(a).

28  / / /

The Trustee is advised that the Agents have California real estate licenses which permit them to sell real property in the State of California.  The Trustee is also advised that the Agents are experienced in dealing with the sale of real property in the context of bankruptcy cases, auctions, and distressed sales.  Descriptions of the Agents' professional experience are incorporated by this reference and are attached as **Exhibits B, C and D** to the Declarations of Mr. Friedman (the "Friedman Declaration"), Ms. Schore (the "Schore Declaration"), and Mr. Flores (the "Flores Declaration") (collectively, the "Declarations") (respectively).

The Trustee requires the assistance of the Broker (through its Agents) to perform the following types of professional services, as appropriate:

    a. To order, analyze and prepare all documentation necessary to list and advertise the Property for sale;

    b. To list the Property with the most propitious listing services available, to show the Property as necessary, to respond to inquiries from potential purchasers, and to solicit reasonable offers from potential purchasers;

    c. To convey all reasonable purchase offers to the Trustee and the Trustee's counsel, and subject to the Trustee's approval, to negotiate and confirm the acceptance of the best offer for the Property;

    d. To cause to be prepared and submitted to escrow, on behalf of the Trustee, any and all documents necessary to consummate a sale of the Property; and

    e. To perform any other services which may be appropriate to advise and assist the Trustee in the marketing and sale of the Property.

The Trustee seeks to employ the Broker (through its Agents) in accordance with the terms of the Listing Agreement, a true and correct copy of which is attached as **Exhibit A**.  The salient terms of the Listing Agreement are as follows:

    a. <u>Listing Period</u>.  The Broker shall have the exclusive right to list the Property effective December 2, 2020.  The Trustee may terminate the Listing

Agreement at his option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the Estate or to the Trustee, either personally or in the capacity as Trustee, as a result of the Termination.

b. <u>Listing Price and Terms</u>.  The listing price for the Property will be $1,425,000.  The Property will be listed and sold in "as is" condition without any representations or warranties whatsoever.  In addition, the sale of the Property will be subject to overbid at public sale and will be subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's creditors, the United States Trustee, and other parties in interest in this case.

c. <u>Broker Commissions</u>.  In the event of a sale of the Property, the Listing Agreement provides for the payment of total broker commissions equal to five percent (5%) of the sale price of the parcel sold.  In the event there is a cooperating broker representing the ultimate buyer of the Property, two- and one-half percent (2.5%) of the broker commission on the parcel sold shall be paid to the cooperating broker, with the remaining two- and one-half percent (2.5%) paid to the Broker.  The Broker (and any cooperating broker representing the buyer) shall be paid its commission through escrow at the close of escrow without a fee application or further court order.

d. <u>Termination</u>.  The Trustee may terminate the Listing Agreement at his option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the Estate or to the Trustee as a result of any such termination.

e. <u>Bankruptcy Court Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction to resolve any and all disputes arising from or relating to the Listing Agreement.

/ / /

3.    The Trustee seeks to employ the Broker pursuant to 11 U.S.C. § 328 and to compensate the Broker out of the proceeds of the sale of the Property at the close of escrow in accordance with the terms of the Listing Agreement.  Given that the Broker is being employed on a contingent fee (commissions) basis pursuant to 11 U.S.C. § 328(a), the Broker will not be required to file a fee application or otherwise seek Court authority to be paid from the Estate for the commission earned in connection with its services described above.

4.    As set forth in the Declarations annexed hereto, to the best of the Broker's knowledge, the Broker does not hold or represent any interest adverse to the Trustee, the Debtor or the Estate, and the Broker is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14).  As stated in the Declarations, to the best of the Broker's knowledge, neither the Broker nor any person employed by the Broker has any connection with the Debtor, any insider of the Debtor, or any other related entities in which the Estate may have an interest.  Further, as stated in the Declarations, neither the Broker nor any person employed by the Broker has any prior connection with any creditors of the Debtor or any other party in interest in the Debtor's case, or their respective attorneys or accountants, the United States Trustee, or any person employed by the United States Trustee, other than that, from time to time, the Broker has acted as the Trustee's real estate broker in other unrelated bankruptcy matters.

5.    The Broker understands the provisions of 11 U.S.C. §§ 327 and 328, which require, among other things, Court approval of the Trustee's employment of the Broker as his real estate broker.

6.    The Trustee believes that the employment of the Broker upon the terms and conditions set forth above is in the best interest of the Estate.

7.    Notice of this Application has been filed and served in accordance with Local Bankruptcy Rule 2014-1(b)(2).

/ / /

/ / /

**WHEREFORE**, the Trustee prays for the following relief:

(1) That the Court enter an Order authorizing the Trustee to employ Coldwell Banker Residential Brokerage as the Trustee's real estate brokers, effective December 2, 2020;

(2) That the Court enter an Order authorizing the Trustee to enter into the Listing Agreement attached as **Exhibit A**;

(3) That the Court enter an Order permitting the Trustee to extend the term of the Listing Agreement in his sole discretion and without further notice or order of the Court; and

(4) That the Court grant such other and further relief as it deems just and proper.


DATED:  January *19*, 2021

Peter J. Mastan, Chapter 7 Trustee


Presented by:

DATED:  January 13, 2021

**MARGULIES FAITH LLP**

*/s/ Meghann A. Triplett*
Meghann A. Triplett
Attorneys for Peter J. Mastan,
Chapter 7 Trustee

### DECLARATION OF WILLIAM FRIEDMAN

I, William Friedman, declare as follows:

1.     I am an agent with Coldwell Banker Residential Brokerage (the "Broker") and, along with my co-listing agents Jane Schore and Steve Flores of Coldwell Banker Residential Brokerage, am being proposed to act as a real estate agent for Peter J. Mastan, Chapter 7 Trustee (the "Trustee") with respect to the bankruptcy estate of Tbetty, Inc. (the "Debtor").  I have personal knowledge of the facts set forth below and, if called to testify, could and would competently testify thereto.

2.     I submit this declaration in support of the attached application (the "Application") filed by the Trustee to employ the Broker to sell the real property located at 3512 Buena Vista Ave., Glendale, CA 91208 (the "Property"), which is located in Los Angeles County.  Unless otherwise defined, all capitalized terms herein have the same meaning as in the Application to which this declaration is annexed.

3.     The Trustee has requested that the Broker assist him in the marketing and sale of the Property and the Broker has agreed to do so, in accordance with the terms of that certain Listing Agreement as to the Property.  A true and correct copy of the Listing Agreement is attached hereto as **Exhibit A.**

4.     I have a California real estate license which permits me to sell real property in the State of California.  I have extensive experience dealing with the marketing and sale of residential real property, such as the Property herein, within multiple areas, including Los Angeles County, in which the Property is located, and have experience dealing with the sale of real property in the context of bankruptcy cases, auctions and distressed sales.  A description of my professional experience is included in **Exhibit B**.

5.     I have had preliminary discussions with the Trustee and my co-listing agent Greg Bingham regarding the marketing and sale of the Property.  I believe that the Property has a current market value of approximately $1,425,000.00 and will require a marketing period of no more than six (6) months to sell.

/ / /

6.    I anticipate that I will be performing the following types of professional services, as appropriate, in connection with our representation of the Trustee in this case:

a.    To order, analyze and prepare all documentation necessary to list and advertise the Property for sale.

b.    To list the Property with the most propitious listing services available, to show the Property as necessary, to respond to inquiries from potential purchasers, and to solicit reasonable offers from potential purchasers.

c.    To convey all reasonable purchase offers to the Trustee and the Trustee's counsel, and subject to the Trustee's approval, to negotiate and confirm the acceptance of the best offer for the Property.

d.    To cause to be prepared and submitted to escrow, on behalf of the Trustee, any and all documents necessary to consummate a sale of the Property.

e.    To perform any other services which may be appropriate to advise and assist the Trustee in the marketing and sale of the Property.

7.    To the best of my knowledge, the Broker is not connected with the Trustee, the Debtor, any creditor or other person in interest, or their respective attorneys, the Office of the United States Trustee ("OUST") or employees of the OUST, bankruptcy judges, or with the Debtor's estate, other than that, from time to time, I have acted as the Trustee's real estate broker in other unrelated bankruptcy matters.

8.    I am informed and believe that the Broker and its agents, associates and employees are each a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), and I:

a.    am not a creditor, an equity security holder, or an insider of the Debtor;

b.    am not and was not, within 2 years before the date of the Debtor's filing of the petition, a director, officer, employee of the Debtor;

/ / /

c.   do not have an interest materially adverse to the interests of the Estate, of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason; and

d.   am not a relative or employee of the OUST or a bankruptcy judge.

9.   The Broker is not a pre-petition creditor of the Estate.

10.   I understand the provisions 11 U.S.C. §§ 327 and 328, which require, among other things, Court approval of the Trustee's employment of the Broker as his real estate broker.

11.   The Broker has been advised of, and has agreed to accept, its proposed employment, subject to the provisions of 11 U.S.C. § 328(a).  Accordingly, the Broker understands that, upon approval of the Application, the Broker will be compensated directly out of sale proceeds at the close of escrow in accordance with the terms of the Listing Agreement.  It is also my understanding that, since the Broker is being employed on a contingent fee (commission) basis pursuant to 11 U.S.C. § 328(a), the Broker will not be required to file fee applications or otherwise seek Court authority to be paid from the Estate for the commission earned in connection with its services.

12.   However, the Broker understands that the Bankruptcy Court may allow compensation different from the compensation set forth in the Application if the Court subsequently determines that such agreed upon terms are improvident in light of developments that could not have been anticipated at the time the Application was approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___/8___ day of January 2021, at Los Angeles, California.

_____
William Friedman

## DECLARATION OF JANE SCHORE

I, Jane Schore, declare as follows:

1.     I am an agent with Coldwell Banker Residential Brokerage and, along with agents William Friedman and Steve Flores of Coldwell Banker Residential Brokerage (the "Broker"), am being proposed to act as a real estate agent for Peter J. Mastan, Chapter 7 Trustee (the "Trustee") with respect to the bankruptcy estate of Tbetty, Inc. (the "Debtor").  I have personal knowledge of the facts set forth below and, if called to testify, could and would competently testify thereto.

2.     I submit this declaration in support of the attached application (the "Application") filed by the Trustee to employ the Broker to sell the real property located at 3512 Buena Vista Ave., Glendale, CA 91208 (the "Property"), which is located in Los Angeles County.  Unless otherwise defined, all capitalized terms herein have the same meaning as in the Application to which this declaration is annexed.

3.     The Trustee has requested that the Broker assist him in the marketing and sale of the Property and the Broker has agreed to do so, in accordance with the terms of that certain Listing Agreement as to the Property.  A true and correct copy of the Listing Agreement is attached hereto as **Exhibit A**.

4.     I have a California real estate license which permits me to sell real property in the State of California.  I have extensive experience dealing with the marketing and sale of residential real property, such as the Property herein, within multiple areas, including Los Angeles County, in which the Property is located, and have experience dealing with the sale of real property in the context of bankruptcy cases, auctions and distressed sales.  A description of my professional experience is included in **Exhibit C**.

5.     I have had preliminary discussions with the Trustee, Trustee's counsel, and my co-listing argent Bill Friedman regarding the marketing and sale of the Property.  I have also inspected the Property on several occasions, and I believe that the Property has a current market value of approximately $1,425,000.00 and will require a marketing period of no more than six (6) months to sell.

6.     I anticipate that I will be performing the following types of professional services, as appropriate, in connection with our representation of the Trustee in this case:

    a.    To order, analyze and prepare all documentation necessary to list and advertise the Property for sale.

    b.    To list the Property with the most propitious listing services available, to show the Property as necessary, to respond to inquiries from potential purchasers, and to solicit reasonable offers from potential purchasers.

    c.    To convey all reasonable purchase offers to the Trustee and the Trustee's counsel, and subject to the Trustee's approval, to negotiate and confirm the acceptance of the best offer for the Property.

    d.    To cause to be prepared and submitted to escrow, on behalf of the Trustee, any and all documents necessary to consummate a sale of the Property.

    e.    To perform any other services which may be appropriate to advise and assist the Trustee in the marketing and sale of the Property.

7.     To the best of my knowledge, the Broker is not connected with the Trustee, the Debtor, any creditor or other person in interest, or their respective attorneys, the Office of the United States Trustee ("OUST") or employees of the OUST, bankruptcy judges, or with the Debtor's estate, other than that, from time to time, I have acted as the Trustee's real estate broker in other unrelated bankruptcy matters.

8.     I am informed and believe that the Broker and its agents, associates and employees are each a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), and I:

    a.    am not a creditor, an equity security holder, or an insider of the Debtor;

    b.    am not and was not, within 2 years before the date of the Debtor's filing of the petition, a director, officer, employee of the Debtor;

/ / /

c.    do not have an interest materially adverse to the interests of the Estate, of

any class of creditors or equity security holders, by reason of any direct or

indirect relationship to, connection with, or interest in, the Debtor, or for

any other reason; and

d.    am not a relative or employee of the OUST or a bankruptcy judge.

9.    The Broker is not a pre-petition creditor of the Estate.

10.    I understand the provisions 11 U.S.C. §§ 327 and 328, which require,

among other things, Court approval of the Trustee's employment of the Broker as his

real estate broker.

11.    The Broker has been advised of, and has agreed to accept, its proposed

employment, subject to the provisions of 11 U.S.C. § 328(a).  Accordingly, the Broker

understands that, upon approval of the Application, the Broker will be compensated

directly out of sale proceeds at the close of escrow in accordance with the terms of the

Listing Agreement.  It is also my understanding that, since the Broker is being employed

on a contingent fee (commission) basis pursuant to 11 U.S.C. § 328(a), the Broker will

not be required to file fee applications or otherwise seek Court authority to be paid from

the Estate for the commission earned in connection with its services.

12.    However, the Broker understands that the Bankruptcy Court may allow

compensation different from the compensation set forth in the Application if the Court

subsequently determines that such agreed upon terms are improvident in light of

developments that could not have been anticipated at the time the Application was

approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on this ___18___ day of January 2021, at _Los Angeles_____,

California.

_Jane Schore_____
Jane Schore

### DECLARATION OF STEVE FLORES

I, Steve Flores, declare as follows:

1.    I am an agent with Coldwell Banker Residential Brokerage and, along with agents William Friedman and Jane Schore of Coldwell Banker Residential Brokerage (the "Broker"), am being proposed to act as a real estate agent for Peter J. Mastan, Chapter 7 Trustee (the "Trustee") with respect to the bankruptcy estate of TBetty, Inc. (the "Debtor").  I have personal knowledge of the facts set forth below and, if called to testify, could and would competently testify thereto.

2.    I submit this declaration in support of the attached application (the "Application") filed by the Trustee to employ the Broker to sell the real property located at 3512 Buena Vista Ave., Glendale, CA 91208 (the "Property"), which is located in Los Angeles County.  Unless otherwise defined, all capitalized terms herein have the same meaning as in the Application to which this declaration is annexed.

3.    The Trustee has requested that the Broker assist him in the marketing and sale of the Property and the Broker has agreed to do so, in accordance with the terms of that certain Listing Agreement as to the Property.  A true and correct copy of the Listing Agreement is attached hereto as **Exhibit A**.

4.    I have a California real estate license which permits me to sell real property in the State of California.  I have extensive experience dealing with the marketing and sale of residential real property, such as the Property herein, within multiple areas, including Los Angeles County, in which the Property is located, and have experience dealing with the sale of real property in the context of bankruptcy cases, auctions and distressed sales.  A description of my professional experience is included in **Exhibit D**.

5.    I have had preliminary discussions with the Trustee, Trustee's counsel, and my co-listing argent Bill Friedman regarding the marketing and sale of the Property.  I have also inspected the Property on several occasions, and I believe that the Property has a current market value of approximately $1,425,000.00 and will require a marketing period of no more than six (6) months to sell.

6.      I anticipate that I will be performing the following types of professional services, as appropriate, in connection with our representation of the Trustee in this case:

    a.    To order, analyze and prepare all documentation necessary to list and advertise the Property for sale.

    b.    To list the Property with the most propitious listing services available, to show the Property as necessary, to respond to inquiries from potential purchasers, and to solicit reasonable offers from potential purchasers.

    c.    To convey all reasonable purchase offers to the Trustee and the Trustee's counsel, and subject to the Trustee's approval, to negotiate and confirm the acceptance of the best offer for the Property.

    d.    To cause to be prepared and submitted to escrow, on behalf of the Trustee, any and all documents necessary to consummate a sale of the Property.

    e.    To perform any other services which may be appropriate to advise and assist the Trustee in the marketing and sale of the Property.

7.      To the best of my knowledge, the Broker is not connected with the Trustee, the Debtor, any creditor or other person in interest, or their respective attorneys, the Office of the United States Trustee ("OUST") or employees of the OUST, bankruptcy judges, or with the Debtor's estate, other than that, from time to time, I have acted as the Trustee's real estate broker in other unrelated bankruptcy matters.

8.      I am informed and believe that the Broker and its agents, associates and employees are each a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), and I:

    a.    am not a creditor, an equity security holder, or an insider of the Debtor;

    b.    am not and was not, within 2 years before the date of the Debtor's filing of the petition, a director, officer, employee of the Debtor;

/ / /

     c.   do not have an interest materially adverse to the interests of the Estate, of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason; and

     d.   am not a relative or employee of the OUST or a bankruptcy judge.

9.     The Broker is not a pre-petition creditor of the Estate.

10.    I understand the provisions 11 U.S.C. §§ 327 and 328, which require, among other things, Court approval of the Trustee's employment of the Broker as his real estate broker.

11.    The Broker has been advised of, and has agreed to accept, its proposed employment, subject to the provisions of 11 U.S.C. § 328(a).  Accordingly, the Broker understands that, upon approval of the Application, the Broker will be compensated directly out of sale proceeds at the close of escrow in accordance with the terms of the Listing Agreement.  It is also my understanding that, since the Broker is being employed on a contingent fee (commission) basis pursuant to 11 U.S.C. § 328(a), the Broker will not be required to file fee applications or otherwise seek Court authority to be paid from the Estate for the commission earned in connection with its services.

12.    However, the Broker understands that the Bankruptcy Court may allow compensation different from the compensation set forth in the Application if the Court subsequently determines that such agreed upon terms are improvident in light of developments that could not have been anticipated at the time the Application was approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of January 2021, at West Hollywood, California.

Steve Flores

# Exhibit A

CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/20)


COLDWELL BANKER
REALTY

Date Prepared: _11/30/2020_

1. **EXCLUSIVE RIGHT TO SELL:** _____ _Peter Mastan, Chapter 7 Trustee_ _____ ("Seller")
hereby employs and grants _____ _Coldwell Banker Realty_ _____ ("Broker")
beginning (date) _December 2, 2020_ and ending at 11:59 P.M. on (date) _____ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as _3512 Buena Vista Ave_
_____, situated in _Glendale_ (City),
_Los Angeles_ (County), California, _91208_ (Zip Code), Assessor's Parcel No. _5615-005-013_ ("Property").
☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _One Million, Four Hundred Twenty-Five Thousand_
   _____ Dollars ($ _1,425,000.00_ ).
   B. Listing Terms: _Subject to U.S. Bankruptcy Court Approval and overbid, addendum attached._

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____
   AND _____, as follows:
   (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ _2.500_ percent of the purchase price, or ☐ $ _____
   (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. ~~(1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows:~~
   ~~(2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities:~~
   ~~(3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.~~

© 2020, California Association of REALTORS®, Inc.

**RLA REVISED 6/20 (PAGE 1 OF 5)**       Seller's Initials ( _pz_ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Coldwell Banker Realty - Los Feliz, 1917 Hillhurst Ave Los Angeles CA 90027    Phone: (323)356-3007    Fax: (323)665-0406    3512 Buena Vista
Steven Flores                           Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Exhibit A                                                                 Page 16

Property Address: *3512 Buena Vista Ave, Glendale, CA 91208*                                    Date: *11/30/2020*

**4.**   **A.**   **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _____ .
**ADDITIONAL ITEMS INCLUDED:** _____ .
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.**   **(1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
☐ Other _____
**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.**   **MULTIPLE LISTING SERVICE:**
**A.**   **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in paragraph 7, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
**B.**   **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
**C.**   **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____*CLAW*_____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by paragraph 7 or by the MLS, Property will be listed with the MLS(s) specified above.

**6.**   **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
**A.**   **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
**B.**   **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (i) Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; (ii) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (iii) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; (iv) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
**C.**   **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
**D.**   **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

Seller's Initials ( _____ )( _____ )          Broker's/Agent's Initials ( _____ )( _____ )

**7.**   **PUBLIC MARKETING OF PROPERTY:**
**A.**   **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see 7F) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
**B.**   **PUBLIC MARKETING WITHIN CLEAR COOPERATION:** (i) Public marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. (ii) Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
**C.**   **"COMING SOON" STATUS IMPACT ON MARKETING:** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☒ does not) authorize Broker to utilize Coming Soon status, if any.

RLA REVISED 6/20 (PAGE 2 OF 5)                    Seller's Initials ( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          3512 Buena Vista

Property Address: _3512 Buena Vista Ave, Glendale, CA  91208_

    D.  **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
       (1)  Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this
          Agreement or ☐ _____ (date).
    OR (2)  ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing
          will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between
          the brokers and licensees affiliated with the listing brokerage and their respective clients.
    E.  **Whether 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the
       Property occur, the Property listing will be submitted to the MLS within 1 business day.
    F.  ☐  **CLEAR COOPERATION POLICY DOES NOT APPLY:** Paragraphs 7A (other than the language in the
       parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent
       for any instruction to not market the Property on the MLS or to the public.
8.  **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites
    unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as
    permitted by (or in accordance with) the MLS is as follows:
    A.  **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the
       Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean
       consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
    B.  **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS
       Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below
       (C.A.R. Form SELI). Seller understands **(i)** that these opt-outs apply only to Websites or Electronic Displays of MLS
       Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other Internet sites
       may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to
       control or block such features on other Internet sites.
       (1)  **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the
          ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the
          Property display.
       (2)  **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another
          site containing such an estimate of value if the link is in immediate conjunction with the Property display.
          ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.
~~9.~~  ~~**SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice~~
    ~~of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation~~
    ~~affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration,~~
    ~~administrative action, government investigation or other pending or threatened action that affects or may affect the Property or~~
    ~~Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall~~
    ~~promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.~~
10. **BROKER'S AND SELLER'S DUTIES:**
    A.  Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless
       Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and
       disclosures including those specified in 10D as necessary, **(ii)** advertise and market the Property by any method and in
       any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the
       dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry
       the receipt of any offers on the Property and the offering price of such offers.
    B.  Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless
       Seller gives Broker written instructions to the contrary.
    C.  Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by,
       among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring
       to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and
       sell the Property.
    D.  Investigations and Reports: Seller agrees, within 5 (or ____) Days of the beginning date of this Agreement, to pay for the following
       pre-sale reports: ☐ Structural Pest Control  ☐ General Property Inspection  ☐ Homeowners Association Documents
       ☐ Other _____
       If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may
       be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include,
       but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or
       complications due to late or slow delivery of such documents.
    ~~E.  Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments,~~
    ~~attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts~~
    ~~that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.~~
11. ~~**DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.~~
12. **AGENCY RELATIONSHIPS:**
    A.  **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
    B.  **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
    C.  **POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker

**RLA REVISED 6/20 (PAGE 3 OF 5)**          Seller's Initials ( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com     3512 Buena Vista

Exhibit A                  Page 18

Property Address: 3512 Buena Vista Ave, Glendale, CA  91208

to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

D.  **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

E.  **POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ *Possible Representation of More than One Buyer or Seller - Disclosure and Consent* (C.A.R. Form PRBS).

13. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

14. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

A.  In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

B.  Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

15. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

16. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

17. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

18. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 22A.

19. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ Trust Advisory (C.A.R. Form TA)
☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

_____

_____

_____

RLA REVISED 6/20 (PAGE 4 OF 5)                    Seller's Initials  ( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          3512 Buena Vista

Property Address: *3512 Buena Vista Ave, Glendale, CA 91208*

20. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days After** its execution.

21. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

22. **DISPUTE RESOLUTION:**

   A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved, if, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 22B.

   B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

   C. **ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

23. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

24. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

☐ **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller _____     Peter Mastan, Chapter 7 Trustee Date 12/28/2020
        Peter Mastan, Chapter 7 Trustee
Address _____     City _____     State ____ Zip _____
Telephone _____ Fax _____     E-mail _____

Seller _____     Date _____
Address _____     City _____     State ____ Zip _____
Telephone _____ Fax _____     E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *Coldwell Banker Realty* _____     DRE Lic. # 00516212
Address *9229 Sunset Blvd, Ste 710* ____     City *West Hollywood* ____ State *CA* Zip *90069*
By _____ Tel. (323)573-6562   E-mail jschore@sbcglobal.ne   DRE Lic.# 00980877   Date 12/1/20
   *Jane Schore / Steve Flores*
By _____ Tel. (323)210-1422   E-mail billfried@earthlink.net   DRE Lic.# 00672015   Date _____
   *Bill Friedman*

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2020 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RLA REVISED 6/20 (PAGE 5 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr, Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com      3512 Buena Vista

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Peter Mastan, solely in the capacity as the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Tbetty, Inc. ("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker ("Broker") the exclusive right to negotiate a sale of the real property commonly described as 3512 Buena Vista Ave, Glendale, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1. _Addendum_. This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2. _No Liability_. The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3. _Termination_. The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4. _Abandonment_. The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest. In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5. _Conditions of Sale_. The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

a. The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal

124805.1    9937176A

capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The sale is subject to overbids.

f.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.    All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

124805.1    9937176A                    2

j.   The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

k.   If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

l.   Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)   the Trustee must prevail with respect to any objections to the proposed sale; and

(2)   the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

m.   The Property is being sold subject to:

(1)   All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

(2)   Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.   Title, however, is to be transferred free of secured claims of record.

6.   <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.   The payment of the commission is subject to prior approval of the Bankruptcy Court.

7.   <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

8.   <u>Entire Agreement</u>. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization

124805.1    9937176A                3

is not contrary to the terms and conditions herein, constitute the entire contract between the parties. All prior agreements between the parties are incorporated into this agreement. Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9. <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization. This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

# Exhibit B



RESIDENTIAL BROKERAGE

**William Friedman**

2444 WILSHIRE BLVD. #102
SANTA MONICA, CA 90403
BUS. (310) 829-3939
FAX (310) 829-7010

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

**Trustees:**
Peter Mastan
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Peter Mastan
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

**Lenders:**
Countrywide Home Loans
Federal Home Loan Mortgage Corp
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank
Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

**Receivers:**
Adrian Stern
Samuel R. Biggs
David L. Ray

Operated by a subsidiary of NRT LLC.

# Exhibit C



RESIDENTIAL BROKERAGE

Resume for Jane Schore

I have been a licensed Realtor since 1988 and my career began at Fred Sands Real Estate and then moved to Coldwell Banker Residential Brokerage when they purchased the former company. My area of expertise is from Downtown Los Angeles to the Beaches, with the majority of my business in Hollywood and the Hollywood Hills.

I enjoy the creative marketing aspect of listing properties as well as representing buyers. I enjoy the process of construction & design, which enhances my ability to help my clients.

My passion is real estate. My clients realize that and, therefore, a majority of my business are repeat clients and referrals.

For several years I have been employed by Trustees of the Bankruptcy Courts to list, market & sell properties in the Greater Los Angeles area.

9229 Sunset Blvd, Suite 320
West Hollywood, CA 90069
Owned by a subsidiary of NRT LLC.

Exhibit C                              Page 26

# Exhibit D



RESIDENTIAL BROKERAGE

Steve Flores
Associate Manager
REALTOR / MBA
COLDWELL BANKER
RESIDENTIAL BROKERAGE
9229 Sunset Blvd, Suite 320
West Hollywood, CA 90069
(323)210-1422



# Steve Flores

"To give real service you must add something which cannot be bought or measured with money, and that is sincerity and integrity." Douglas Adams

Steve is a Southern California native and real estate professional who represents buyers and sellers in all price ranges, in both residential and commercial real estate. He has extensive knowledge of the real estate market in Southern California.

A member of the National Association of Realtors along with the California Association of Realtors, Steve is a 20 year - plus real estate veteran, Associate Manager and a Certified Commercial Specialist with the Los Feliz & Sunset Strip Offices of Coldwell Banker Residential Brokerage.  He is a board member of the Coldwell Banker Community Foundation, and has received a high level of success, receiving recognition as a top producer.

Educated at the California State University at Long Beach & Dominguez Hills, he earned a Bachelor's and a Master's Degree in International Business, respectively.

Having a high level of sensitivity towards life's transitions, Steve welcomes the opportunity to represent you in the marketing or purchase of your home, estate or commercial real estate.

Owned by a subsidiary of NRT LLC.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **APPLICATION TO EMPLOY REAL ESTATE BROKER AND TO ENTER INTO EXCLUSIVE LISTING AGREEMENT; DECLARATIONS OF DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSONS UNDER F.R.B.P. 2014 AND L.B.R. 2014-1(b)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 19, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On January 19, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

JUDGE: Service on Judge not required per Court Manual, Appendix F
DEBTOR: Tbetty, Inc., 5300 Beach Blvd., Ste. 110-605, Buena Park, CA 90621

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA EMAIL**:
**BROKER**: William Irving Friedman, billfried@earthlink.net
**BROKER**: Jane Schore, jschore@sbcglobal.net
**BROKER**: Steve Flores, stvfl@hotmail.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 19, 2021 | Vicky Castrellon | /s/ Vicky Castrellon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

## ADDITIONAL SERVICE INFORMATION (if needed):

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

**ATTORNEY FOR DEBTOR: Ann Chang**    achang@dumas-law.com
**ATTORNEY FOR TRUSTEE: Jeremy Faith**    Jeremy@MarguliesFaithlaw.com,
Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
**ATTORNEY FOR DEBOR: Christian T Kim**    ckim@dumas-law.com, ckim@ecf.inforuptcy.com
**FORMER ATTORNEY FOR TRUSTEE: Noreen A Madoyan**    Noreen@MarguliesFaithLaw.com,
Helen@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
**TRUSTEE: Peter J Mastan (TR)**    pmastan@iq7technology.com;travis.terry@dinsmore.com;
ecf.alert+Mastan@titlexi.com
**ATTORNEY FOR INTERESTED PARTY: Andrew Edward Smyth**    office@smythlo.com
**ATTORNEY FOR INTERESTED PARTY: Stephen S Smyth**    office@smythlo.com;r58723@notify.bestcase.com
**ATTORNEY FOR INTERESTED PARTY: Nico N Tabibi**    nico@tabibilaw.com
**ATTORNEY FOR TRUSTEE: Meghann A Triplett**    Meghann@MarguliesFaithlaw.com,
Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
**United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
**ATTORNEY FOR CREDITOR: Michael H Yi**    myi@yimadrosenlaw.com, r53621@notify.bestcase.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**